[Civ. No. 17398. Second Dist., Div. Three. July 28, 1950.]

HARRY B. BRATTAIN et al., Appellants, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Respondent.

Charles E. Beardsley and Jackson A. Jordan for Appellants.

C. W. Cornell, O. O. Collins, John R. Allport, Clyde C. Beery for Respondent.

VALLÉE, J.—Appeal by plaintiffs, husband and wife, from an order granting defendant's motion for a new trial in an action for damages for personal injuries and injury to property allegedly caused by the negligence of defendant in operating one of its interurban cars. Defendant denied negligence and affirmatively alleged that plaintiffs were contributively negligent. The trial was by jury; verdict and judgment were for plaintiffs.

The court granted the motion upon the grounds: 1. Insufficiency of the evidence. 2. Misconduct of the jury (one juror having visited and viewed the scene of the accident during the trial) by which defendant was prevented from having a fair trial. 3. The verdict was against law.

The accident, a collision between plaintiffs' automobile and defendant's streetcar, occurred on November 24, 1945, on Sepulveda Boulevard where it crosses defendant's right of way north of Exposition Boulevard. Sepulveda is a four-lane highway, with a gravel shoulder on each side, and at the point of the accident extends in a northerly-southerly direction. Defendant's right of way is approximately 100 feet in width on which is located one set of railroad tracks. Between Pico and Exposition, both of which run in an easterly-westerly direction, Sepulveda curves slightly, but where it crosses defendant's right of way it runs a straight course for a distance of about 156 feet north of the track. On the west side of Sepulveda just north of the track there was a wigwag signal atop a striped pole, and a similar signal on the east side just south of the railroad track. The photographs introduced in evidence show there was nothing on the east side of Sepulveda to obstruct the view of the approach of defendant's westbound streetcars. The weather was clear. It was just getting dark. It appears without conflict that immediately preceding and at the time of the collision the wigwags were ringing, the lights of defendant's streetcar were on, the

motorman blew a series of whistles and clanged his bell as he approached and crossed Sepulveda.

Plaintiffs, with their two sons, were traveling south on Sepulveda, in the lane of traffic immediately adjacent to the center line of the street, at a speed of between 25 and 30 miles an hour. Defendant's streetcar was westbound, going about 15 to 20 miles an hour. It had crossed the easterly half of Sepulveda when the accident occurred.

The rules which govern a reviewing court in the determination of an appeal from an order granting a new trial are so well known they need not be repeated. The Supreme Court has recently said that the order of the trial court will be reversed only when it can be said as a matter of law that there is no substantial evidence to support a contrary judgment. (*Brooks* v. *Metropolitan Life Ins. Co.*, 27 Cal.2d 305, 307 [163 P.2d 689].)

Plaintiff Harry B. Brattain was the only witness to testify for plaintiffs concerning the accident. His wife had no recollection of what occurred. He testified: As he proceeded southerly he observed no signs on the west side of Sepulveda Boulevard—no markings on the highway, no wigwag signals, no signs on overhead cables, or any other signs or markings warning of the existence or approach of a railroad crossing. He did not see the railroad track before the collision as it was flush with the street. The lights of oncoming cars were in his eyes and obstructed his left view. There were no automobiles immediately ahead of him in his lane but there were cars ahead of him in the lane to his right. He did not, and could not, observe the wigwag signal to the west of him over the tops of these automobiles. The first thing which called his attention to the track or to defendant's streetcar was a blast of a horn or a whistle immediately to his left. He instinctively applied his brakes, swerved the car to his right, and was struck by the streetcar on the left front of his car. He visited the scene the day after the accident. At that time he saw both wigwag signals. The one at the southeast corner was covered with weeds which extended to within a foot or two of the top; the signal was barely over the car tops, and on the southeast corner of Exposition Boulevard behind this wigwag was a building in which were electric neon signs. He further testified that he was a stranger to this particular area and had never traveled over this intersection.

On cross-examination Mr. Brattain testified the first time he heard a warning signal was almost at the moment of impact.

"Q. Then do you know whether any warning signal had been sounded prior to that time? A. I do not. Q. Do you know whether or not the headlight of the train was lighted? A. No, sir. Q. Do you know whether or not the interior lights of the train were on? A. I did not see them at the time. Q. Do you know whether or not any automatic warning signals, either visual or that you can hear were sounded? A. I did not see or hear any. Q. Did you look or is it just that you don't know? A. I did not look prior to the accident because, as I have stated, I had no idea in the world that there was anything in the nature of a car crossing there. . . . Q. . . . I will make a statement first, Mr. Brattain, and then I will ask you if it is not true that you made that statement to the police at the time we are talking about. Here is the statement: 'I was driving and conversing with my wife and two sons at the time. Traffic was very heavy and I guess I was rather confused. I did not notice the railway wigwag. The street car loomed up in front of me and I jammed on my brakes and tried to swerve to avoid collision, but believe I smashed into the side of the street car.' My question is, is it not a fact that you made that statement to the police officer immediately after the collision? A. I could not say positively that I made that statement in those words, but it is possible that I may have made some such statement. Q. What about the facts? Were you conversing with your wife and two sons immediately before the accident? A. There was always just a little general conversation going on; I have no occasion to remember anything in particular about conversations."

The police officer who investigated the accident approximately 10 minutes after it happened testified that Harry Brattain told him the traffic was quite heavy at the time; that he was talking to his wife and two sons as he was driving along and he must have been confused because he did not see the wigwag signal, and all of a sudden the streetcar loomed in front of him and he collided with it.

Harvey Johnson, who was traveling in the lane to plaintiffs' right, testified he saw the lighted streetcar approaching when he was about 150 feet north of the track. He pulled over to the gravel shoulder and stopped his car. An automobile in front of him also stopped. Plaintiffs' car, however, "just went right straight ahead and ran into the street car." Ralph Cummings, who was also traveling in the lane to the right of plaintiff, testified he stopped his car approximately 10 to 15

feet north of the track and as the street car came across Sepulveda, plaintiffs' car, which was "traveling in the middle lane . . . came alongside of me and smashed into it."

The foregoing evidence was sufficient to support a verdict for defendant on the ground that negligence was not shown as a matter of law. Also it was reasonable to conclude that Brattain did not use ordinary care to avoid the collision; that had he exercised ordinary care he would have observed the wigwag signals in operation, heard the warning signal of the streetcar, seen the streetcar, and been aware of its approach. We cannot say, as a matter of law, that there was no substantial evidence to support a verdict for defendant.

We do not find any merit in appellants' contention that the trial judge misconceived the evidence and for that reason abused his discretion in granting the motion. In passing on the motion the judge filed a 16-page memorandum. Appellants' contention stems from the fact that in the memorandum he summarized the testimony of Harry Brattain and in doing so began by saying that Brattain testified: "There are railroad crossing signs with white boards. I saw some crossing signs at the scene of the accident today." Appellants argue that it is apparent the trial judge believed Brattain was referring to white crossarm railroad signs at the railroad crossing where the accident occurred at the time of the accident when in fact it is undisputed there were none, and that he based his order on such misconception. Assuming, without deciding, that the memorandum may be considered in determining the question before us, it is clear from reading it as a whole that the judge did not grant the motion because of a misconception of the evidence but because he believed the evidence was insufficient to sustain the verdict. He stated in the memorandum that "Mr. Brattain never saw the train and does not know how the accident happened" and that "after mature study" he was satisfied the verdict was wrong, against the weight of the evidence, and should be set aside.

The foregoing renders unnecessary a discussion of whether the conduct of the one juror was prejudicial.

Order affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.