[L. A. No. 3996. In Bank.—November 13, 1917.]

## MERCANTILE TRUST COMPANY OF SAN FRANCISCO, Respondent, v. SUNSET ROAD OIL COMPANY et al., Appellants.

APPEAL—NEW TRIAL.—It is not within the province of the supreme court on appeal from an order granting a new trial to say which of two opposing inferences, both within the bounds of reason, should have been drawn by the trial court.

ID.—DISCRETION OF TRIAL COURT.—In deciding a motion for a new trial, the trial court has large discretionary power, and its order denying or granting such motion will not be reversed on appeal, unless an abuse of discretion appears.

ID.—POWER OF TRIAL COURT—DRAWING INFERENCES.—In considering the evidence upon a motion for new trial, the trial court has power to draw inferences opposed to those which were drawn by it on the trial, provided they are not unreasonable.

ID.—ORDER GRANTING NEW TRIAL—REASONS OF TRIAL COURT NOT GIVEN. When a new trial is granted by the trial court, and no reasons are specified, the supreme court on appeal must uphold the order if any ground upon which it might have been granted is supported by the record.

MORTGAGE—CORPORATION BONDS—FORECLOSURE—PRIORITY OF LIENS ON PROCEEDS OF SALE—ESTOPPEL BY REPRESENTATIONS.—One who induces a bank to surrender a first lien on property, by promises and

representations that a corporation controlled by him, which had taken over or was about to take over the same property, will issue to the bank bonds secured by trust deed on the property, and that these bonds shall be a first lien for the bank's security, but who, after the bank has surrendered its original lien and accepted the corporation bonds in exchange, causes the issue to himself of additional bonds secured by the same trust deed, in apparent parity with those held by the bank, is estopped from participating in the proceeds of the security upon a foreclosure until the bonds of the bank are satisfied, although the holder of the additional bonds may have caused them to be issued with no bad intent and in the belief that the property hypothecated was of sufficient value to satisfy all the bonds.

ID.—ESTOPPEL—STATUTE OF LIMITATIONS.—Such an estoppel in favor of the bank is in the nature of a defense to the claim of the holder of the additional bonds to enforce his right to an equal lien on the property, which defense is not lost by lapse of time, and the statute of limitations has no application thereto.

APPEAL from an order of the Superior Court of Kern County granting a new trial.   H. A. Peairs, Judge.

The facts are stated in the opinion of the court.

Gavin McNab, R. P. Henshall, A. A. De Ligne, Denman & Arnold, and Donzel Stoney, for Appellants.

Morrison & Brobeck, and A. E. Shaw, for Respondent.

SHAW, J.—This is an appeal by the defendants above named from an order granting a motion of the Kern Valley Bank and W. R. Williams, superintendent of banks, for a new trial of the action.

The complaint states a cause of action for the foreclosure of a mortgage executed to secure bonds issued by the Sunset Road Oil Company. The Sunset Road Oil Company was organized in June, 1905. In the early part of July, 1905, it authorized the creation of a bonded debt of two million dollars, to be evidenced by 1,990 bonds for one thousand dollars each, and one hundred bonds for one hundred dollars each, running twenty years at five per cent annual interest. On July 15, 1905, it duly executed to the plaintiff, Mercantile Trust Company of San Francisco, a deed of trust or mortgage to secure the payment of the proposed bonds, transfer-

ring and conveying to the Trust Company for that purpose certain parcels of property in Kern County, and also all other property, real and personal, which said Oil Company then owned or might thereafter acquire. In pursuance of this mortgage or trust deed, bonds were prepared for issuance and a large number of them, amounting to one million, four hundred and ninety-five thousand dollars, were sold by the company to divers persons. The Oil Company failed to pay interest on the bonds. The principal was thereupon declared due and payable, and on March 4, 1911, the plaintiff began this action to foreclose said deed of trust as a mortgage.

Thereafter the Kern Valley Bank, and Williams as superintendent of banks on its behalf, appeared in the action and filed a cross-complaint, making the appellants herein parties thereto, alleging that the said appellants each claimed to hold certain of the bonds of said Oil Company; that said bank was the owner of 459 of said bonds of the par value of one thousand dollars each, and four bonds of the par value of one hundred dollars each, amounting to four hundred and fifty-nine thousand four hundred dollars; that the bonds held by the appellants were by said appellants fraudulently procured to be issued; that they were issued without any consideration, and that in consequence thereof they are invalid, and that the holders are not entitled to participate in the proceeds of any sale of the property upon the foreclosure, and asking that the bonds held by the bank be declared to be a prior lien upon the said properties, paramount to the liens of the bonds held by the appellants respectively, and that the said bank's bonds be first paid out of the proceeds. The court below upon the trial made findings declaring that the bonds issued to the appellants respectively were not fraudulently issued; that they were issued for a valuable consideration, and that the cause of action stated in the cross-complaint was barred by the statute of limitations, and, concluding therefrom that the Kern Valley Bank was entitled to no relief upon its cross-complaint, gave judgment for the foreclosure of the trust deed and sale of the properties covered thereby, and directing the payment of the bonds of all the parties *pro rata* out of the proceeds. Thereupon the Kern Valley Bank moved for a new trial. This motion was granted, and an order was made directing a new trial, from which this appeal is taken.

Of these outstanding bonds, the Kern Valley Bank holds four hundred and fifty-nine thousand four hundred dollars, the Metropolis Trust and Savings Bank, as pledgee in trust for sundry persons, one hundred and seventy-three thousand two hundred dollars, and the Canadian Bank of Commerce, as pledgee to secure the debt of Tevis, three hundred and sixty-five thousand dollars. The ownership of the remaining four hundred and ninety-seven thousand four hundred dollars is not stated in the findings.

The Kern Valley Bank acquired bonds to the amount of two hundred and forty-four thousand two hundred dollars in December, 1905, in satisfaction of a debt of two hundred and forty-four thousand two hundred dollars theretofore due to the bank from Jewett & Blodget, a firm composed of Solomon Jewett and H. A. Blodget, both of whom were, during all this period, directors of the bank, and bonds to the amount of one hundred and ninety thousand dollars were acquired by the bank in December, 1907, in exchange for an individual debt of said Blodget to the bank, amounting to over two hundred and twenty-three thousand dollars. It is not shown how the bank acquired the remaining twenty-five thousand two hundred dollars of its bonds.

The principal controversy upon the cross-complaint of the Kern Valley Bank arises from the claim that the two blocks of bonds taken for the Jewett & Blodget debt, and the H. A. Blodget debt, respectively, should be preferred in payment from the proceeds of the property, over all other bonds issued by the Sunset Road Oil Company.

The cross-complaint of the Kern Valley Bank, among other things, alleged the following facts: In May, 1905, the firm of Jewett & Blodget owed the Kern Valley Bank two hundred and forty-four thousand two hundred dollars, upon certain promissory notes, which were secured to be paid to the bank by first mortgage liens upon the same property that is described in the trust deed herein sought to be foreclosed. The board of state bank commissioners then had legal supervision and control of the affairs of said bank and objected to said debt of Jewett & Blodget on the ground that the bank's loan to them was made while they were officers of the bank, and that the securities held by the bank therefor could not be readily converted into cash, and notified the bank that unless said indebtedness was liquidated forthwith, the bank would

be closed by said board. To avoid this disaster the appellant, W. S. Tevis, at the instance of Blodget, undertook to assist in extricating said bank from its difficulties, and in that behalf, he represented to said board that the Sunset Road Oil Company was organized for the purpose of taking over all of the said properties which said bank, as aforesaid, held as security for the payment of said Jewett & Blodget debt, and that it had authorized the issuance of bonds thereon, to be secured by first mortgage on the said real estate, that he could procure for the bank such first mortgage bonds of said Oil Company to the amount of two hundred and forty-four thousand two hundred dollars, face value, in exchange for the Jewett & Blodget debt, and he agreed that said bonds so exchanged should be a first and prior lien to any other indebtedness which might then exist or thereafter be incurred by said Oil Company. The said board, being in control of the affairs of said bank, on its behalf accepted the said proposition, and thereupon caused the said bank to receive said bonds in satisfaction of the Jewett & Blodget debt, and delivered over to Jewett & Blodget the notes theretofore held by the bank as evidence of said debt. The real estate so held by the bank as security for said Jewett & Blodget debt was transferred to said Oil Company, and was by it conveyed to the plaintiff herein, as security for the bond issue theretofore authorized by said Oil Company. Before said exchange of bonds for the Jewett & Blodget debt was effected, Tevis, in conjunction with the appellants, Beal and Blodget, for the purpose of defrauding the said bank and decreasing the amount of its security for said bonds, and for their own advantage, caused the said Oil Company, of which they had control, to issue to Tevis four hundred thousand dollars of said bonds, ostensibly in consideration of the aforesaid conveyance of said properties by him to the Oil Company. The two hundred and forty-four thousand two hundred dollars of bonds afterward given to said bank in exchange for the Jewett & Blodget debt were a part of the four hundred thousand dollars of bonds so issued to Tevis. Thereafter the said appellants, Tevis, Blodget and Beal, without the consent of said bank or said commissioners, procured other bonds of said issue, to be issued without adequate consideration and delivered to themselves and others, amounting to seven hun-

dred and ninety thousand three hundred dollars, of which Tevis received and still holds and controls nearly four hundred thousand dollars, which, upon the face of said trust deed, would have equal right to payment with the bonds so exchanged to said bank. The bank commissioners relied on said representations and promises, and did not know of any issue of bonds in excess of the two hundred and forty-four thousand two hundred dollars to be exchanged for the Jewett & Blodget debt, and would not have consented to such exchange if they had known that other bonds were to be or would be issued upon an equal footing therewith. The value of the properties covered by the trust deed does not exceed five hundred thousand dollars.

The court below found that the bank did not have any liens whatever upon the property afterward mortgaged as security for the said Sunset Road Oil Company's bonds, and that there were no representations made by Tevis to the effect that the bonds taken for the Jewett & Blodget debt should be a first lien, or paramount to the other bonds of the authorized issue.

There is evidence in the record sufficient to support a finding of the truth of the aforesaid facts alleged in the cross-complaint. The evidence as to some of them is inferential. It is not within the province of this court on appeal to say which of two opposing inferences, both within the bounds of reason, should have been taken by the trial court. Conflicting inferences, if reasonable, stand upon the same plane as conflicting evidence. In deciding a motion for a new trial the court below has large discretionary power. Its order either denying or granting such motion will not be reversed on appeal unless an abuse of discretion appears. In considering the evidence upon such motion that court has power to draw inferences from the evidence opposed to those which were drawn by it upon the trial, provided they are not unreasonable. The order granting the motion for a new trial was general in its terms. It did not specify the reasons upon which the motion was granted. This court must uphold the order if any ground upon which it might have been granted is supported by the record. We are, therefore, bound to assume that the court, upon its last consideration of the evidence, believed that the inferences in favor of the Kern Val-

ley Bank should prevail, rather than those against it, and we cannot say that this was an abuse of discretion.

The question, therefore, arises whether upon these facts the bank was entitled to any relief. Of this we have no doubt. The bank was induced to give up its first lien on the property for the debt of two hundred and forty-four thousand two hundred dollars owing to it from Jewett & Blodget, and accept in exchange a like amount of bonds of the Oil Company secured by the same property, upon the promise that these bonds should be a first lien thereon, and thereupon it released Jewett & Blodget from the debt. The person who made the promise, according to the facts assumed, thereupon caused the issue to himself of additional bonds upon the same property in parity with those of the bank, and for no consideration except the property upon which the bank formerly held a prior lien. The same person afterward caused additional issues of bonds to himself which also have an equality in law with those of the bank. All this was done without the consent of the bank. The amount of all these bonds exceeds the value of the property hypothecated as security. The effect of allowing such person to claim a part of the proceeds of the property would be to reduce the value of the bank's security below the amount of its debt. Under these circumstances the person who thus obtained and holds the additional bonds will be estopped from participating in the proceeds from the security until the bonds of the bank are satisfied. The circumstances indicate that these additional bonds were caused to be issued by Tevis and his associates with no bad intent, but in the belief that the property hypothecated as security was of sufficient value to satisfy them all. This, however, would not affect the result. Tevis had agreed that the bonds issued to the bank should have priority, and as the bank acted on that agreement, he, at least, is bound by it, regardless of his intent in issuing the subsequent bonds.

This estoppel is in the nature of a defense to the claim of Tevis, made through the medium of plaintiff's foreclosure, to enforce his right to an equal lien on the property. Such defense is not lost by lapse of time and the statute of limitations has no application thereto.

There are many other questions arising in the case and presented in the briefs which it is unnecessary to consider. Our conclusion upon the question we have discussed is suffi-

cient to support the order granting the new trial.    We express no opinion concerning the merits of the other questions.
The order is affirmed.

Sloss, J., Melvin, J., Victor E. Shaw, J., *pro tem.*, Henshaw, J., and Angellotti, C. J., concurred.