[L. A. No. 19453.   In Bank.   Nov. 27, 1945.]

MAXINE FOGARTY BROOKS, Respondent, v. METRO-
POLITAN LIFE INSURANCE COMPANY (a Corpo-
ration), Appellant.

Walker, Adams & Duque and A. Andrew Hauk for Appellant.

Henry H. Childress and Paul Sandmeyer as Amici Curiae on behalf of Appellant.

Ray Howard and W. W. Comstock for Respondent.

GIBSON, C. J.—This is a suit on an accident insurance policy issued by defendant to plaintiff's husband, S. B. Brooks. The policy insured Brooks "against the results of bodily injuries . . . caused directly and independently of all other causes by violent and accidental means," and provided for double indemnity if the injuries be received "in consequence of the burning of any building in which the insured shall be at the commencement of the fire." The policy further provided: "This insurance shall not cover suicide or any attempt thereat while sane or insane; . . . nor shall it cover accident, injury, disability, death or any other loss caused wholly or partly, directly or indirectly, by disease or mental infirmity or medical or surgical treatment therefor."

After a jury verdict in favor of the defendant, the court granted plaintiff a new trial on the ground of insufficiency of the evidence. Defendant contends that in so doing the court erred because (1) the evidence without conflict discloses that the insured committed suicide, and (2) the evidence fails to show that insured's death was not caused "wholly or partly, directly or indirectly, by disease or mental infirmity."

In passing upon a motion for a new trial based upon the insufficiency of the evidence, it is the exclusive province of the trial court to judge the credibility of the witnesses, determine the probative force of testimony, and weigh the evidence (*People* v. *Sarazzawski, ante,* p. 7 [161 P.2d 934] ; *Green* v. *Soule,* 145 Cal. 96, 102 [78 P. 337] ). In considering the sufficiency of the evidence upon such motion the court may draw inferences opposed to those drawn at the trial (*Mercantile Trust Co.* v. *Sunset etc. Co.,* 176 Cal. 451, 456 [168 P. 1033] ), and where the only conflicts consist of inferences deduced from uncontradicted probative facts, the court may resolve such conflicts in determining whether the case should be retried (*Cauhape* v. *Security Savings Bank,* 118 Cal. 82, 84 [50 P. 310] ). It is only where it can be said as a matter of law that there is no substantial evidence to support a contrary judgment that an appellate court will reverse the order of the trial court. (See *Dempsey* v. *Market Street Ry. Co.,* 23 Cal.2d 110, 113 [142 P.2d 929].)

Brooks met his death between 7 and 8 o'clock on the morning of November 19, 1941, in a fire which started in his bedroom. There were no eyewitnesses and the evidence is wholly circumstantial as to what happened at that time. Two years prior to his death, Brooks had undergone an operation for a cancerous condition which was diagnosed as incurable. Until August, 1941, he was able to drive his automobile but thereafter his condition was such that by October he was confined to his room. He spent most of his time in bed but continued to have an active interest in current affairs and could walk unassisted about the bedroom and to the adjoining bathroom. Brooks was attended by day and night nurses, and for several weeks before his death he was given morphine and other drugs in large quantities to relieve constantly increasing pain. The night nurse was on duty until 7 a. m. and Mrs. Brooks was customarily present with him until the day nurse arrived at 8 a. m. On the morning of November 19, however, Mrs. Brooks left home before 7 o'clock in order to attend to some business.

When the night nurse left, Brooks was lying in his bed with his eyes closed. A large pile of newspapers and magazines was on top of the bed within easy reach and other newspapers were on a low bench nearby. There was a pint bottle of rubbing alcohol, one-half to two-thirds full, on top of a dresser in a corner of the room. A cot used by the

nurse stood at a right angle with the bed and there was a space three feet in width between the foot of the bed and the side of the cot. A portable gas stove, connected with an outlet in the bathroom by six feet of rubber hose, was left burning when the night nurse went off duty. The witnesses are not in agreement in fixing the location of the stove in the room. Mrs. Callahan, the night nurse, said it was at the foot of the cot. Mrs. Brooks testified that when she left the room shortly before 7 o'clock, it was in the narrow space between the cot and the foot of the bed. The testimony of Mrs. Brooks was corroborated by Mr. Olson, the owner of the premises, and Mrs. McCulley, the day nurse, who were the first witnesses to observe the room after the fire started. They testified that the stove was between the bed and the cot. The location of the stove is relevant in view of plaintiff's claim that one reasonable explanation of the origin of the fire is that newspapers accidentally fell from the bed and were ignited by contact with the stove. If the stove was between the cot and bed instead of at the foot of the cot it would be nearer the papers piled on the bed, and the explanation therefore would be more probable.

The night nurse stated that during the previous evening Brooks said that he hated to die without leaving his wife more money. She further testified that about 15 minutes before 7 on the morning of the 19th Brooks said to her "it's time you are going." She said that when she went off duty the shades were up and the front door was unlocked.

When the day nurse arrived a little before 8 o'clock, she was unable to open either the front or side doors. She smelled smoke and called Mr. Olson who lived next door. Olson was unable to open the front door with his keys but entered the house through a living room window and opened the front door on the inside by turning the knob. He testified that so far as he knew the door was not locked. The fire in the bedroom was extinguished by water from a garden hose. Brooks was found dead on the cot, the lower portion of his body being badly burned. A pad on the cot had been burned around his body and there were burned newspapers on the cot and ashes of newspapers or magazines on the floor. A portion of the bed also had been burned, partly burned bedding was on the floor near the stove, and the floor was burned under and around it over an area of about three feet in diameter. There was an odor of alcohol on the upper

portion of Brooks' pajamas and the bottle that had contained alcohol was found empty in the wastepaper basket near the bed. The shades in the bedroom were drawn.

It is clear from the foregoing statement that not only is there some conflict in the testimony as to the physical facts but conflicting inferences may be deduced from the facts proved. The inferences that might be drawn in explanation of an accidental origin of the fire are in conflict with those that point to suicide, and although the evidence would warrant a conclusion that the insured took his own life, it would also support a finding that his death was caused by accidental means. It is not our function to determine what inferences should be drawn from the facts proved but since the facts are subject to conflicting inferences, we cannot say, as a matter of law, that the evidence compels the conclusion that the cause of death was suicide.

■■■ Defendant next urges that the evidence fails to show, as required in the policy, that the death was not caused wholly or partly, directly or indirectly, by disease or mental infirmity. The report of the autopsy surgeon states that insured's death was caused by second and third degree burns, but defendant argues there can be no liability under the policy because it does not appear that disease and mental infirmity did not in some measure contribute to the cause of death.

The decisions interpreting risk exclusion clauses similar to the one here involved, are not in accord. Some of the cases hold that the insurer is not liable unless the accidental injury is sufficient of itself to cause death to a healthy man, and that recovery is precluded if death would not have resulted except for preexisting disease or infirmity. (*Commercial Travelers' Mut. Acc. Assn.* v. *Fulton,* 79 F. 423 [24 C.C.A. 654]; *National Masonic Acc. Assn.* v. *Shryock,* 73 F. 774, 775 [20 C.C.A. 3]; *Thomas* v. *Fidelity & Casualty Co.,* 106 Md. 299 [67 A. 259]; *Ryan* v. *Continental Casualty Co.,* 47 F.2d 472, 473; 6 Couch on Insurance (1930), § 1249, p. 4569.)

■■■ On the other hand there is authority for what in our opinion is the correct rule, that the presence of preexisting disease or infirmity will not relieve the insurer from liability if the accident is the proximate cause of death; and that recovery may be had even though a diseased or infirm condition appears to actually contribute to cause the death if the

accident sets in progress the chain of events leading directly to death, or if it is the prime or moving cause. (*Scanlan* v. *Metropolitan Life Ins. Co.*, (C.C.A. 7th, 1937), 93 F.2d 942, 946; *Kelly* v. *Prudential Ins. Co. of America* (1939), 334 Pa. 143 [6 A.2d 55, 59]; 1 Appleman, Insurance Law & Practice (1941) pp. 497, 498; 6 Couch on Insurance (1930), § 1249, p. 4569; cf. *Hanna* v. *Interstate B. M. Acc. Assn.*, 41 Cal.App. 308, 310 [182 P. 771].)

Although it appears that the insured was suffering from an incurable cancer and was under the influence of narcotics given to relieve pain, and that by reason of his weakened and infirm condition he may have been less able than a normal person to withstand the effect of the injuries, there is evidence from which the court could conclude that the proximate cause of his death was burns received in a fire of accidental origin.

The order granting a new trial is affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellant's and respondent's petitions for a rehearing were denied December 20, 1945.