[Civ. No. 15487. First Dist., Div. One. June 30, 1953.]

HENRY K. HENDERSON, Respondent, v. LILY ZELLER-BACH DRAKE, Appellant.

Erskine, Erskine & Tulley, J. Oscar Goldstein and Burton J. Goldstein for Appellant.

H. W. Glensor for Respondent.

PETERS, P. J.—Plaintiff, Henry K. Henderson, a lawyer authorized to practice in Mexico, brought this action against defendant, Lily Zellerbach Drake. The complaint contains two counts. The first count was for $17,922 upon an accepted draft alleged to have been made and accepted and delivered in Mexico by defendant. The second count was for $19,259.35 upon a Mexican judgment obtained by plaintiff upon the same draft, with the then accrued interest added. The draft was given to Henderson, it is claimed, in payment for legal services rendered to Mrs. Drake. The cause was tried before the court without a jury, and resulted in a judgment in favor of defendant on both causes of action and on all major issues. Thereafter, the trial court granted plaintiff's motion for a new trial upon all the grounds urged in the motion, including, specifically, the insufficiency of the evidence to sustain the judgment. Defendant appeals from the order.

█ The burden of appellant on such an appeal is great. All presumptions are in favor of the order. It must be sustained unless a clear abuse of discretion is made to appear.

█ Insufficiency of the evidence having been made a ground for granting the motion, the trial judge had the power to pass upon the weight of the evidence. (*Dorsa* v. *MacNeil,* 112 Cal. App.2d 807 [247 P.2d 577]; *Norden* v. *Hartman,* 111 Cal. App.2d 751 [245 P.2d 3]; *Estate of Lekos,* 109 Cal.App.2d 42 [240 P.2d 387]; *Ridenour* v. *Scarcella,* 107 Cal.App.2d 554 [237 P.2d 322].) This is the rule whether the case was tried before the court alone or before a jury. (*People* v. *One 1947 Cadillac,* 109 Cal.App.2d 504 [240 P.2d 1035]; *Mercantile Trust Co.* v. *Sunset etc. Co.,* 176 Cal. 451 [168 P. 1033]; *Sweeley* v. *Leake,* 87 Cal.App.2d 636 [197 P.2d 401].)

█ If the court, as here, has specified several grounds for granting the motion, the appellate court must affirm the order granting the new trial if any one ground upon which it might have been granted is supported by the record. (*Mercantile Trust Co.* v. *Sunset etc. Co.,* 176 Cal. 451 [168 P. 1033].)

█ Of course, an order granting a new trial to a plaintiff cannot be upheld if the evidence produced at the original trial, plus the evidence erroneously excluded, plus proper newly discovered evidence, would not support a judgment for the

plaintiff. (*Moss* v. *Stubbs*, 111 Cal.App. 359 [295 P. 572, 296 P.. 86] ; *Henderson* v. *Braden*, 35 Cal.App.2d 88 [94 P.2d 625] ; *McAtee* v. *City of Marysville*, 111 Cal.App.2d 507 [244 P.2d 936].)

Appellant does not controvert these propositions, but claims that the evidence produced in the original trial and that offered on the motion for a new trial would not support a judgment in respondent's favor. An examination of the record demonstrates that the contentions of appellant are unsound. That being so, the order granting the new trial must be affirmed.

The amended complaint alleges, in the first cause of action, that on May 12, 1946, in Mexico City, appellant accepted a sight draft payable to respondent for 87,000 pesos, currently of the value of $17,922 in United States money. Demand and nonpayment are averred, as well as a 9 per cent Mexican legal interest rate. The second cause of action avers that a Mexican court of general jurisdiction duly rendered a judgment in favor of respondent in an action on the draft on September 28, 1948, for 87,000 pesos plus 6,492 pesos interest and costs. The total value of this judgment is claimed to be $19,259.35, all unpaid. The answer to the first cause of action denies the basic allegations, and contains a denial that the draft was presented for acceptance or accepted as alleged. As affirmative defenses appellant pleaded absence of presentment for payment, lack of protest for nonpayment, and that, if the draft existed, respondent induced appellant to accept it without consideration and by false and fraudulent representations. As to the second cause of action, the answer, among other things, denies the general jurisdiction of the Mexican court, the due rendition of the judgment, and the presentation for acceptance or acceptance of the draft itself. The Mexican judgment is affirmatively attacked on the ground that it is a personal judgment secured without service of process on or notice to appellant, and without appearance by her or by her attorney.

At the inception of the trial, and before, the trial court denied a requested continuance to counsel for respondent made on the ground that it was imperative that Henderson, then in Mexico, be present at the trial.[1] The claimed improper denial of this continuance was made a ground for the motion

---

[1]It should be mentioned that before respondent requested this continuance, counsel for respondent had consented to two continuances requested by counsel for appellant.

for a new trial, and the order granting the new trial included error in that ruling as one of its grounds.

The facts in reference to the denial of this requested continuance are as follows: The instant case, and a related case brought by one Cruz against Mrs. Drake[2], were finally set for trial for June 25, 1951, the setting order listing the Cruz case ahead of the Henderson case. On this date the chief counsel for Henderson and Cruz sought to have the Henderson case tried first, stating to the court at that time that he did not need Henderson at the trial to testify.[3] This request was denied by the trial court and the Cruz case proceeded to trial.

On July 2, 1951, in the middle of the Cruz trial, counsel for Henderson stated that he was going to have to request a continuance of the Henderson case in order to permit Henderson to come to San Francisco and testify. Henderson's presence was now necessary, it was claimed, because appellant had offered an amendment to her answer which changed the original issues involved in that by the amendment she charged in detail that the Mexican judgment had been secured against her by the fraud of, and a conspiracy between, Cruz and Henderson. Henderson's counsel pointed out that his client was then traveling in Mexico and could not be reached until he arrived back in Mexico City on July 5th, and even then could not come by air because of a promise made to his family at the time of the death of his brother in an air accident that he would never fly. It was also pointed out that the trial judge wanted to leave on his vacation the following week. For these reasons, Henderson's counsel orally requested a continuance until August or September. The trial judge stated that he would postpone his vacation until July 16th and that the Henderson case would go to trial at the conclusion of the Cruz case. The court, at that time, also granted permission to appellant to file her challenged amendment. Henderson's counsel stated that, because of this order, it was now indispensable to have Henderson present, and that he would try his best to have him at the trial the next week.

Counsel for Henderson felt so strongly that Henderson should be present that he told one of appellant's counsel that

---

[2]The same counsel represented Cruz as here represents Henderson. Mrs. Drake's counsel was the same in both actions.

[3]This fact does not appear in the present record but was stipulated to at the oral argument rather than require the augmentation of the record.

he was contemplating dismissing the Henderson case, and then refiling. To forestall this, on July 3, 1951, and while the Cruz case was still on trial, counsel for Drake moved to amend the prayer of the answer to seek affirmative relief. A somewhat protracted argument then took place, resulting in appellant's counsel withdrawing not only her proposed amendment of July 3d, but also the amendment, already allowed, of July 2d. The court then ordered the case to trial upon the original answer.

On July 11, 1951, at the conclusion of the trial of the Cruz case but before decision had been rendered in that case, and upon taking up the Henderson case, respondent's counsel made a formal motion for a continuance, supported by affidavits, in order to secure the presence of Henderson, it being claimed that in view of some of the evidence produced in the Cruz case the presence of Henderson was required.

In support of this motion, the attorney for Henderson averred that he had told Henderson it was not necessary for him to attend the trial; that in reliance on that, Henderson had taken a trip to Florida and Vera Cruz; that during the Cruz trial it was charged that Cruz and Henderson entered into a conspiracy to defraud Mrs. Drake; that such charges now made it imperative that Henderson be present; that the attorney had been unable to reach Henderson until July 4th, at which time Henderson promised to leave Mexico City on July 6th and come to San Francisco; that on July 5th Henderson contracted virus pneumonia which made travel impossible. The facts of the sickness and inability to travel were confirmed by the affidavit of a doctor in Mexico City.

Counsel for appellant opposed the motion on several grounds. It was claimed that Henderson was in fact unwilling to come to San Francisco and testify; that he was afraid to submit his case to the same judge who had tried the Cruz case; and that if Cruz went back to Mexico appellant would be unable to secure him to testify. The trial court denied the motion for a continuance and ordered the Henderson case to trial the next day, July 12, 1951.

It is quite apparent that the granting or denial of this continuance was probably within the discretion of the trial court, and that a ruling either way on the motion probably would not be disturbed on an appeal. It is equally apparent that, on the motion for a new trial, after the court had presumably discovered how imperative Henderson's presence

was for the presentation of his case, it decided it had abused its discretion in denying the motion and concluded that the motion should have been granted. As already pointed out, this was one of the grounds upon which the motion for a new trial was granted. In view of the ground of insufficiency of the evidence also made part of the order granting, we must assume that the trial court reweighed the evidence on this controverted matter and decided, in effect, to reverse itself. It seems clear that, upon a motion for a new trial on the ground of insufficiency, the trial court, in reviewing the weight of the evidence, may review its factual determination upon which it originally predicated its discretionary order. No reason appears why the trial court on such a motion cannot change its mind as to the weight to be given facts upon which discretionary action is predicated as well as to the weight to be given other evidentiary material. This ground alone supports the trial court's order granting the new trial as to both causes of action, and requires an affirmance.

We turn now to a separate consideration of each cause of action. As to the first cause of action, appellant urges that there was no evidence produced at the trial or offered as newly discovered evidence on the motion for a new trial that would support a judgment for respondent.

The evidence shows that Mrs. Drake, an elderly widow, lived in Mexico for some time prior to 1946. Between 1943 and 1946 she employed Cruz, apparently as a secretary. Cruz claimed, and Mrs. Drake denied, that during most of this period he acted for her under several powers of attorney. Mrs. Drake and Cruz were the sole witnesses to the events that culminated in the execution of the draft that is the basis of this action. Both told vague, poorly recollected and conflicting stories. Cruz, over objection, was permitted to testify as a witness called by respondent under section 2055 of the Code of Civil Procedure on the theory that he had been appointed the managing agent for Mrs. Drake. He testified that he prepared and typed the draft, which is in Spanish, at appellant's request, and, pursuant to their usual custom, left it at her house in Mexico City. He did this after a conversation with Mrs. Drake in which she told him that Henderson was pressing for payment of his bill for legal services; that his bill was excessive; that Cruz should make the draft for about 80,000 pesos, or even ''for a million'' because she was ''not going to pay it anyway.'' He did not see

the draft signed or delivered, but several days later Mrs. Drake told him that ''Mr. Henderson came by and got it.'' On his own trial Cruz had testified, and such testimony was used as impeachment testimony in the present trial, that he was present when Mrs. Henderson accepted the draft and delivered it to Henderson.

The draft, and a translated copy, were admitted into evidence, without objection. It is in the form of a sight draft drawn on a third party and reads as follows:

''87,000 Pesos Mexico, D. F. 12th of May, 1946.

''On the 12th of May, 1948, on sight you will make payment by this Sole Exchange Draft in the City of Mexico to the order of Henry K. Henderson the sum of EIGHTY SEVEN THOUSAND PESOS EXACTLY - - - - - - - - - - - - - Value received you will deposit in account _____ notice of

To Mrs. Lily Zellerbach Vda. de Drake.—Marsella 8.—Mexico, D. F.—

Yours truly.—(signed) Fernando Garcia.—Scroll.—

Accepted: Mexico D. F.—12th of May 1946.— (signed) Mrs. Lily Drake.—''

The identity of Fernando Garcia, the drawer of the draft, was a mystery, both Cruz and Mrs. Drake testifying that they did not know nor had they ever heard of such a man.

The Mexican consul, a lawyer who qualified as an expert on Mexican law, testified for respondent to the effect that the above document was a sight draft of a type frequently used in Mexico, and which, once accepted, became, in legal effect, a promissory note. After acceptance the obligation to pay is binding whether the draft has a drawer or not. He also stated that occasionally such drafts are issued without a drawer.

Mrs. Drake admitted that the signature on the draft was hers, but claimed that her signature had been secured by fraud. She denied that she had ever signed a draft in favor of Henderson for 87,000 pesos, denied that she had ever discussed such a draft with Cruz, or that anyone had ever told her to accept any paper signed by this unknown Garcia, denied that she had ever delivered such a document to Henderson, or that Henderson had ever discussed with her or had ever billed her for any such amount, and denied seeing

Henderson after January of 1946. With some reluctance she admitted that Henderson had performed some legal services for her in Mexico, for which she had not paid him, because, she claimed, he had not billed her for the services, and denied that she ever discussed fees with him. She admitted that Henderson as her attorney had negotiated a reduction in the rent of her residence to half its former level. She also testified, very vaguely, about some litigation involving a Mr. Desmond in which Henderson represented her. Desmond had apparently sued Mrs. Drake for slander and she admitted that Henderson had appeared in court on her behalf in this action. She could not recall whether Henderson had induced her to sign the retraction that apparently ended this action. She also admitted that she had sued Desmond to recover some property that she claimed had belonged to her deceased husband, and that Henderson had represented her in that action. She also admitted that Henderson had appeared in the Mexican Labor Court in her behalf growing out of some labor claims. She left Mexico in September, 1946, and has never returned. She admitted that Henderson tried to see her before she left, but she refused to allow him to come into the house.

Without objection a letter dated August 12, 1946, from Mrs. Drake to Henderson was admitted into evidence. It reads as follows:

"Dear Mr. Henderson,

"Words cannot express my appreciation for all you have done for me since Mr. D's death.

"I regret having been so much trouble to you. It seems that I have been constantly pressed by all sorts of trouble in this uncivilized country. You know how these Mexican pigs are. You are too much of a gentleman lawyer, you bother too much about ethics. I have needed a gangster lawyer. I intend to be hard and crooked as you should be. Mr. Stafford and the entire bunch of useless bandits at the American Consulate have been of little help.

"When I go to New York I intend to have my say about the National City Bank bunch also.

"I realize that your fees, including expenses and sums advanced when I needed them are not without reason. I regret having given you a promissory note. If I had the eighty seven thousand pesos I would pay you now. I know that just the inheritance matter alone is worth it.

"The American government is no better than the Mexican. They are both out to steal all they can get.

"It is unfortunate that we had to leave Monte Carlo but as you know it was on account of the war.

"You will hear from me soon and you will get your money as soon as I receive my dividends from my company. I intend to pay even before the note is due. You were right about that Desmond bum. He is a horrible person. I wish I had heeded your advice.

Sincerely<br>Mrs. Frank Drake.''

Mrs. Drake admitted that the signature on this letter was hers, but testified that she had never seen the letter before she came to court, and contended that Cruz must have typed the letter above her signature as part of the claimed conspiracy against her.

The expert witness produced by respondent produced and there was introduced into evidence various sections of the Mexican Commerce Code applicable to Mexican commercial transactions. One section provides that in actions on negotiable instruments "only the following exceptions and defenses can be made." Then follow 11 defenses. Lack of consideration is not listed as a defense. Based on this section, respondent argues that lack of consideration for a negotiable instrument is not a defense under Mexican law, even as between the original parties to the instrument. The expert did not directly so testify, nor is there any evidence to the contrary.

In an affidavit filed on the motion for a new trial Henderson set forth many other services rendered Mrs. Drake that he would have testified to had he been present, and he and his attorney averred the discovery of several letters from Mrs. Drake in which she admitted some of these services.

On this record appellant first contends that there was a total lack of any evidence that would have supported a finding of the due execution and delivery of the draft. The point is without merit. The draft was in possession of Henderson. It was admittedly signed by appellant. Cruz testified that he prepared the draft at appellant's request, and that she told him that it had been delivered to Henderson. That evidence alone is sufficient to establish a prima facie case of due execution and delivery. Certainly that evidence, plus the presumptions that supplement it, is sufficient. The

last sentence of section 3097 of the Civil Code[4] provides: ''And where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved.''

The presumption found in this section is sufficient to establish a prima facie case as to due execution and delivery in favor of one in possession of a negotiable instrument admittedly signed by the person whose name appears thereon. (*Hockett* v. *Pacific States Auxillary Corp.*, 218 Cal. 382 [23 P.2d 512]; *Umbsen* v. *Crocker First Nat. Bank*, 33 Cal.2d 599 [203 P.2d 752].) No citation of authority is necessary to establish that in this state a presumption is evidence, is alone sufficient to create a conflict in the evidence, and may support a finding even in the face of uncontradicted conflicting testimony produced by the adverse party.

 Appellant seeks to defeat the applicability of the presumption by asserting that it does not apply to a document in a foreign language where the record shows the signer did not understand the foreign language in which the document here is written. Even if this limitation on the doctrine did exist (a point we do not decide), certainly it was incumbent upon appellant to show that she did not understand Spanish. Although it is urged in the Reply Brief of Appellant, page 5, that ''The record demonstrates that Mrs. Drake did not speak Spanish and that if she did sign this draft she could not have known what she was signing,'' we have been referred to no evidence produced during the trial to the effect that Mrs. Drake did not understand or could not read Spanish. The only reference made by appellant in support of the above statement is to an affidavit of Mrs. Drake made on motion for a new trial to the effect she was unable to ''write'' the language. Moreover, the trial court could, on the motion for a new trial, pass upon her credibility, and disbelieve the averment.

 Appellant next contends that there was no substantial evidence that would have supported a finding of consideration. This contention is clearly without merit. Appel-

---

[4]There was no evidence of what the Mexican law on this subject may be. In the absence of proof to the contrary, it will be presumed that the law of a foreign country is the same as that of California. (See discussion 5 Cal.Jur. p. 430, § 12.) The judicial notice provisions of section 1875 of the Code of Civil Procedure only apply to sister states and not to foreign countries.

lant herself testified as to some legal services rendered by Henderson. That evidence alone proved consideration. This evidence is supported by the several presumptions of consideration, this being an instrument in writing. (Civ. Code, §§ 1614, 3105, and Code Civ. Proc., § 1963, subds. 21 and 39; see *Cohen* v. *Kaufman*, 89 Cal.App.2d 463 [200 P.2d 834].) It should also be mentioned that on the motion for a new trial Henderson averred that, had he been present, he would have testified to many other legal services, which he enumerated, that he claims were rendered to appellant. Thus there was ample evidence upon which the trial court could have found consideration. This conclusion makes it unnecessary to pass upon respondent's further contention that he proved that under Mexican law lack of consideration could not be urged as a defense to a negotiable instrument. The respondent's proof of this was unsatisfactory. He merely introduced the Commerce Code section above mentioned, but did not have his expert elaborate on the subject or discuss it. That undoubtedly can and will be gone into further on the new trial.

From this discussion it appears that the trial court was justified in granting the new trial as to both causes of action because of its determination that it had committed error in denying the continuance, and, as to the first cause of action, on the ground of insufficiency of the evidence.

It also appears that, in addition to the continuance ground, there were other sound reasons for granting the new trial as to the second cause of action, that is, on the Mexican judgment. It appears that Mrs. Drake did not personally appear, nor was she personally served in that action. Jurisdiction over her was attempted by service upon Cruz, it being contended that he possessed two powers of attorney from Mrs. Drake which, under Mexican law, it was claimed, permitted the obtaining of personal jurisdiction over an absent party by personal service on the possessor of such a power.

Cruz produced both powers. The first dated January 5, 1944, conferred upon Cruz the power to administer Mrs. Drake's property. This power may be disregarded, because, according to plaintiff's expert, it did not confer on the agent the authority to appear and represent Mrs. Drake in litigation. The second power was executed February 6, 1945, before the Mexican Consul General in New York City. This document, in Spanish, confers upon Cruz a general power of attorney and specifically confers the power upon him to act for Mrs. Drake "for litigations and collections,"

a provision which, according to the expert, permitted its possessor to be served or to appear on behalf of any person executing the power. The expert explained that, under Mexican law, the power of attorney is issued by a notary or consul by having the principal sign a book called the "protocol." A certified copy of that record serves as the power of attorney. Any interested person can secure a copy. As a matter of practice, a person who does not understand Spanish who desires to execute such a power may have it translated, and the notary or consul must explain the general purport of the document to the principal. Under Mexican law the power may be revoked, but is presumed valid until the signature of the principal is disproved. The expert also noted that there was no indication that the power had been recorded in Mexico, and stated that if the power were to be used in litigation involving the principal it had to be filed in a court in Mexico.

Appellant testified that she had never conferred any power of attorney on Cruz; that while she remembered signing a document in the New York consulate she did not know it was a power of attorney; and that the document was never translated or explained to her.

The record shows that service was had upon Cruz, who did not appear or defend the action, and that judgment by default was taken against Mrs. Drake.

The Mexican judgment roll was introduced into evidence without objection, accompanied by a translation. The expert on Mexican law produced by respondent gave some confused testimony on the procedural requirements of Mexican law. He testified that under Mexican law the power of attorney had to be presented to and filed in the proceeding before a default, based upon service upon the agent, could be taken against the principal. Respondent claims that such is only one way of proving the existence of the power to accept service, and that the existence of the power can be proved in other ways, as was done here. Moreover, as respondent points out, although there is no express recital in the judgment roll showing that the power was filed with the Mexican court, there is a recital in the judgment that "The Executory Commercial channels has [sic] been complied with."

The evidence on this issue as to whether the judgment would be valid or invalid in Mexico was far from satisfactory. It undoubtedly will be clarified on the new trial. On the present state of the record we can say that the evidence and

the inferences and presumptions arising therefrom, are in conflict. This being so, and the order granting the new trial having specified insufficiency of the evidence, the trial court was justified, on this ground, in granting the new trial as to this cause of action.

The order granting the new trial is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.