[Civ. No. 11512. Fourth Dist., Div. Two. Dec. 23, 1971.]

JOSEPH N. McMACKIN, Plaintiff and Respondent, v.
GREAT AMERICAN RESERVE INSURANCE COMPANY,
Defendant and Appellant.

## Counsel

Best, Best & Krieger and William R. DeWolfe for Defendant and Appellant.

Reid, Babbage & Coil, Enos C. Reid and William R. Bailey, Jr., for Plaintiff and Respondent.

## Opinion

**KERRIGAN, Acting P. J.**—In this action by an insured against the insurer on a sickness and accident disability policy, the trial court determined that the plaintiff sustained accidental bodily injury on January 4, 1966, which resulted in permanent and total disability, entitling him to $200 monthly indemnity payments under the accident disability provisions of the policy so long as he lives and remains totally disabled.

Simply stated, this appeal involves the question of whether or not the plaintiff is entitled to lifetime monthly payments for accidental bodily injury under the provisions of the aforesaid accident and sickness policy.

On February 18, 1964, the defendant, Great American Reserve Insurance Company, a foreign corporation, issued a disability policy to the plaintiff, Joseph N. McMackin, age 51, then on active duty with the California Highway Patrol. The benefits under the policy included monthly indemnities of $200 per month for a maximum period of 24 months for total disability due to *sickness* and $200 per month for total disability due to *injury,* to continue as long as the insured lived and remained totally disabled. Both the sickness and accident provisions contained a 30-day waiting period.

The policy contained the following pertinent conditions:

"This policy insures against (1) loss or disability (herein defined) resulting, directly and independently of all other causes from accidental bodily injury sustained during the term of this policy, said bodily injury being

hereinafter referred to as 'such injury,' and (2) disability (herein defined) resulting from sickness caused by disease which originates after . . . the policy date . . . ."

"Total disability defined

"For the purpose of determining the commencement of total disability, 'Total Disability' means only such complete incapacity of the Insured that he is able to perform none of the duties of any occupation, business or employment for remuneration or profit for which he is reasonably fitted by education, training or experience; provided, however, that *in no event shall 'Total Disability' exist* for any purpose of this policy *during any period in which the Insured is engaged in his . . . occupation, business or employment for remuneration or profit.*"

"Loss of time by bodily injury

"*If such injury shall, within thirty days from date of accident, totally disable the Insured, and shall require the personal care and regular attendance* of a . . . physician or surgeon, the Company will pay, beginning after . . . [30 days], the monthly indemnity specified in the schedule [\$200], and *continuing as long as the Insured lives and remains so totally disabled, . . .*"

"Loss of time by sickness

". . . If such *sickness* shall totally disable the Insured and shall require the personal care and regular attendance of a . . . physician or surgeon, the Company will pay, beginning after . . . [30 days], the monthly in-indemnity specified in the schedule [\$200], and continuing as long as the Insured remains so totally disabled, but not to exceed . . . [24 months . . .]."

"Recurrent disability

". . . If, following a period of disability due to *sickness,* the Insured shall resume his regular occupation and perform all the important duties thereof for a continuous period of six months or more, any subsequent disability arising during the continuance of this policy and resulting from or contributed to by the same cause or causes shall be considered a new period of disability and indemnified in accordance with the proper provisions of this policy, but if the period of such employment shall be less than six months such subsequent disability shall be, for the purpose of determining the maximum period of time for which indemnity is payable and the days excepted in the schedule, regarded as a continuation of the same disability and the Company's liability for the entire period, including

said preceding disability or disabilities, shall be subject to the limits mentioned in the Article or Articles under which the original period of disability was indemnified."[1]

"Exclusion, limitations and reductions

"This policy does not cover any loss, fatal or non-fatal, resulting wholly or partly, directly or indirectly, from (1) . . . [war or military service]; (2) [air travel]; (3) . . . pregnancy; (4) sickness for any period for which the Insured is entitled to indemnity on account of accidental bodily injury; (5) suicide . . . ; (6) *results from disease originating or bodily injury occurring prior to the policy date* if the Insured received medical or surgical treatment for such disease or injury at any time during the period of five years immediately prior to the date of this policy, unless such treatment was disclosed in the application of this policy."

"INCONTESTABLE: (a) After this policy has been in force for a period of *2 years* during the lifetime of the Insured, it shall be *incontestable* as to the statements and conditions contained in the application.

"(b) No claim for loss incurred or disability (as herein defined) *commencing after 2 years* from the effective date of this policy shall be reduced or denied on the grounds that a disease or physical condition, not excluded from coverage by name or specific description, which caused or contributed to the disability had existed prior to the effective date of this policy." (Italics supplied.)

On January 4, 1966, the insured was on duty at the Riverside C.H.P. office and went inside a closet to pick up a carton of citation forms. The citations were in numerical sequence and the carton containing those to be used next in order was under two or three other cartons. The closet was narrow and to move the cartons, the plaintiff had to place one foot in the closet with the other remaining outside. In moving the boxes, he suffered a sharp pain in his back in the area between his shoulder blades— the interscapular region of the back.

He was off work January 5 due to the injury; he worked January 6; took the 7th and 8th as regular days off; worked the 9-13th; took the 14th and 15th as regular days off; worked January 16-18; took January 19-20 as regular days off; worked January 21-27; took January 28-30 as regular days off; worked January 31-February 1; on February 2, he was unable to work because of the injury; he worked February 3 until 4 p.m. and then visited a doctor for examination and treatment.

---

[1]The policy does not contain any similar "re-starting of benefits" provision in the event of *recurrent disability arising from injury,* as distinguished from *sickness.*

His Riverside physician examined him and prescribed therapy and some mild medication.

Following the examination and therapy treatment, plaintiff worked and took his regular days off during the period February 4-14, except that he was unable to work due to his physical disability on February 6 and February 9.

On February 15 he saw his physician again and stopped working. He was off work due to his physical disability from February 15 to April 17, 1966, inclusive.

On February 14—10 days after he first saw a doctor and 41 days after sustaining the injury—he reported the accident to the insurer.

In late March 1966, his doctor wrote a letter to the insurer in which he advised the carrier that he had recommended that the claimant remain off work until April 17, 1966.

The defendant paid plaintiff the sum of $220 as compensation for disability due to injury for the period February 15 to April 17 (after deducting the 30-day waiting period set forth in the policy.)

On April 18, plaintiff returned to work and was ordinarily in attendance at the Riverside C.H.P. office until December 22, 1966, except for a four-week vacation in mid-summer. During this eight-month period, he saw the doctor and therapist intermittently. Although he was on the job, there is evidence indicating that he could not properly perform as a field sergeant and that he worked slowly as an administrative sergeant. With the exception of one-half day worked on December 27, he has been unable to return to work since December 22, 1966. Simply stated, he has been totally disabled since December 27, 1966.

Plaintiff has a rather formidable medical history which may be summarized as follows: (1) A low back sprain sustained and treated at some time in the 1940's; (2) two coccyx injuries in 1952, one of which resulted in a 20½ percent disability award from the Industrial Accident Commission; (3) a kick in the head incurred in issuing a citation in 1955; (4) an automobile accident resulting in possible cervical or dorsal injuries in 1955; (5) an injured sacroiliac in 1961; (6) a back injury in 1965; and (7) the subject injury of January 4, 1966.

On August 4, 1967, the California Workmen's Compensation Appeals Board approved a compromise and release agreement in the sum of $6,000 in four cases filed by plaintiff, which recited approximately 70 percent

disability; the four industrial cases and the compromise and release agreement included an application alleging the January 4, 1966, back injury incident. Additionally, in March 1966, plaintiff sustained a strain of his upper back and groin in lifting a T-V set at home.

Plaintiff's physician testified that the January 4, 1966, injury was totally disabling as of February 3, 1966, resulting in total permanent disability from December 22, 1966, to the date of trial, with the exception of the one-half day worked on December 27, 1966.

Conflicting therewith was testimony of an orthopedic surgeon called by the insurer. He characterized the January 4, 1966, injury as a strain of the scapular parathoracic muscalature (strain of the muscles in the shoulder-blade area) resulting in a fibrositis-type syndrome. He described the disability flowing from the January 4 incident as "mild" and not incapacitating and would not, standing alone, keep the plaintiff from performing his normal duties as a patrolman. While his views of causation varied from those expressed by plaintiff's doctor, he concurred in the opinion that plaintiff was totally disabled at the time of trial. He attributed the total disability to severe anxiety tension, degenerative arthritis of the spine, and the residual effects of the 1955 back injuries.

While stated in varying ways, the insurer maintains that the findings necessary to support the judgment are not supported by substantial evidence, and that even assuming the findings are supported by substantial evidence, that said findings are inconsistent as a matter of law with the insurance policy, thereby invalidating the judgment.

The trial court made the following material findings: (1) On January 4, 1966, while the subject policy was in full force and effect, the insured suffered an accidental bodily injury while lifting a carton of citations; (2) the injury sustained on said date resulted in total disability within 30 days and required a physician's care and treatment; (3) the insured was totally disabled and unable to work due to physical disability on January 5, February 2, February 6, February 9, 1966, and further did not work because of physical disability from February 15 through April 17, 1966, inclusive; (4) the insured worked April 19 through December 21, 1966, but was unable to perform his duties fully during such period; (5) between April 19-December 21, 1966, he was allowed to remain in service as a California Highway Patrolman for several reasons, to wit, his civil service position, his long record of outstanding work and his desire to be on the job even though he was disabled, and continued to be disabled, because of the January 4, injury; (6) during such period of April 18-December 21, 1966, plaintiff received his regular compensation as a C.H.P. sergeant and

no inefficiency reports were filed with respect to his performance; (7) from December 22, 1966 (with the exception of ½ day on December 27, 1966) to the time of trial, plaintiff had been totally disabled and unable to engage in any gainful employment; (8) while plaintiff had an extensive medical history dating back to the 1940's, he was not permanently disabled by any injury or illness until the injury sustained on January 4, 1966; and (9) the injury of January 4, 1966, was the proximate cause of plaintiff's total disability, resulting in his complete incapacity to perform the duties of his employment.

The insurer's attack on the findings based on insufficiency of the evidence takes the following form: (1) No evidence that plaintiff suffered *total disability* within 30 days of January 4, 1966, as defined in the policy; (2) assuming plaintiff became totally disabled as a result of the accident on January 4, 1966, such total disability ended when he returned to work on April 18, 1966; (3) plaintiff became totally disabled in December 1966 as a result of a "sickness," not an "accident"; (4) assuming plaintiff may be considered "totally disabled," said disability was not caused by the January 4 accident, but was due to his pre-existing condition which was not covered under the policy.

Turning first to the initial findings that plaintiff sustained an accidental bodily injury on January 4, 1966, which resulted in total disability within 30 days and which required the care and treatment of a physician, it should be noted at the outset that the question of whether disability is a result of sickness or injury ordinarily presents a question of fact. (*Allessandro* v. *Massachusetts Cas. Ins. Co.*, 232 Cal.App.2d 203, 210 [42 Cal.Rptr. 630].) Plaintiff testified that he was injured on that date. The claimant's testimony, standing alone, would provide sufficient proof to sustain the finding of an accident. In addition, plaintiff's testimony was corroborated by his own doctor. Likewise, defendant's orthopedist characterized the January 4 incident as an injury. Consequently, the finding of *accidental bodily injury* is well-supported.

In a similar vein, credible evidence exists that plaintiff suffered temporary total disability within 30 days of the accident. He was off two days within such period due to the injury, to wit, January 5 and February 2. He was examined by his doctor on February 3, 1966, within the 30-day period, and received treatment from a therapist or nurse under the doctor's supervision within the policy period. There is also evidence that he received medication on that occasion. Thereafter, he was totally disabled and unable to work for over two months—February 15-April 17, 1966, and was in-

demnified in the sum of $220 by the insurer for the time lost due to such disability.[2]

The insurer next contends that whatever total disability plaintiff suffered in early 1966 as a result of this accident ended on April 18, 1966, when he resumed his employment at full salary. In advancing this argument as to cessation of liability, the defendant relies on the definition of the term "total disability" contained in the policy to the effect that such disability does *not* exist during any period in which the insured is engaged in his regular occupation, and further relies on the absence of a provision in the policy indemnifying the insured against a "recurrent disability."

It should first be noted that a person can be totally disabled in two ways: temporarily or permanently. (See *Associated Oil Co.* v. *Industrial Acc. Com.*, 214 Cal. 358 [5 P.2d 420].) Here, the trial court found on the basis of strong evidence that plaintiff was totally disabled for two days prior to February 3, 1966, and that he was totally disabled from February 15 to April 17, 1966, inclusive. The evidence is conclusive that he has been totally and permanently disabled since December 27, 1966. But irrespective of whether the disability suffered by plaintiff from February 1966 to the date of trial be characterized as temporary or permanent, the crucial question is whether he was "totally disabled" within the meaning of the policy after December 22, 1966 or December 27, 1966, at the latest.

In the final analysis, the question of what amounts to total disability presents a factual issue. (*Erreca* v. *West. States Life Ins. Co.*, 19 Cal.2d 388, 397 [121 P.2d 689, 141 A.L.R. 68].) Total disability does not signify an absolute state of helplessness; it is such a disability that renders the insured unable to perform the substantial and material acts necessary to the prosecution of a business or occupation in the usual or customary way; recovery is not precluded under a total disability provision because the insured is able to perform sporadic tasks or give attention to simple or inconsequential details incident to the conduct of the business; conversely, the insured is not totally disabled if he is physically and mentally capable of performing a substantial portion of his work connected with his employment; he is not entitled to benefits merely because he is rendered unable to transact one or more of the duties connected with his business. (*Erreca* v. *West. States Life Ins. Co., supra*, p. 396.)

While the insurer takes the position that an interruption in the period of disability arising from injury absolutely precludes recovery for a

---

[2]While the evidence is conflicting as to whether the carrier made the $220 disability payment under the sickness or accident provisions of the policy, the matter is of no significance inasmuch as the trial court held that said payment did *not* estop the insurer from denying coverage against plaintiff's claim for lifetime indemnity.

recurrent disability, such is not the law in California. An insured should not be penalized for a desire to resume his job, and a futile effort to return to work, notwithstanding the existence of disability, will not preclude recovery of benefits once the claimant's condition has become stationary and permanent.

In *Joyce* v. *United Ins. Co.* , 202 Cal.App.2d 654 [21 Cal.Rptr. 361, 17 A.L.R.3d 517], the plaintiff was employed as a medical technician or tool maker at Stanford University; he injured his right shoulder on December 12, 1957; he nevertheless continued to work; on January 10, 1958, he injured his right arm while on the job; he left work and secured medical attention the following Monday; from that time until the time of trial, he did not resume work except for two separate periods, to wit: June 1-June 18 and August 26-October 1; with respect to the first period, plaintiff testified he was unable to do his job; he returned to work the second time for economic reasons but was unable to perform satisfactorily and ultimately was released; the trial court found that plaintiff was wholly and continuously disabled from the date of injury to the date of trial; that the attempts to return to work had been futile, and that he had been terminated for being unable to do the work; in affirming the judgment allowing benefits under a disability insurance policy, the reviewing court held that a determination of disability is a question of fact, and that from the evidence before it, the trial court could have reasonably concluded that plaintiff should not have returned to work even though he did so; consequently, the two attempts to return to work did not, as a matter of law, negate the finding of total disability. (*Joyce* v. *United Ins. Co., supra,* 202 Cal.App.2d 654, 663-665; see also *Wright* v. *Prudential Ins. Co., etc.,* 27 Cal.App.2d 195, 216 [80 P.2d 752].)

Likewise, the return to work by the plaintiff herein for a period of eight months did not preclude recovery and supports the trial court's finding that he made a futile attempt to return to work although totally disabled.

Similarly, the defendant's contention that the policy itself precludes future recovery of disability payments once the insured returns to work after a disabling injury is not well-taken. The contract provides that "in no event shall 'Total Disability' exist for any purpose of this policy *during any period* in which the Insured is engaged in his . . . occupation . . . ." (Italics added.) This clause prevents the insured from recovering benefits *while he is working,* but is silent with regard to payments after the insured *stops* working. Should we accept the insurer's argument on this point, an injured employee would tend to remain at home. He could return to work

only at the peril of forfeiting all future disability payments. Public policy dictates that an injured worker be encouraged to return to this job.

■ The final issue is whether there was substantial evidence to sustain the trial court's finding that the sole and proximate cause of the total disability was the January 4, 1966 accident. In resolving this question, it should be noted initially that the question of causation is ordinarily one for the trial court to determine. (18 Couch on Insurance (2d ed. 1968) § 74:697, p. 607.) The testimony of plaintiff's physician alone would support the trial court's finding that the total disability was due to the January 4 incident.

■ While defendant claims foreign authority exists that where plaintiff suffers from a pre-existing arthritis condition, he is not entitled to indemnity under an accident policy inasmuch as the accident cannot be said to be the sole and independent cause of the disability (*Benefit Trust Life Insurance Company* v. *Jackson,* 446 S.W.2d 729), California law exists establishing that the presence of a pre-existing disease or infirmity will not relieve the insurer from liability, if the accident is the proximate cause of death, and that recovery may be had even though the disease appears to have actually contributed to the cause of death if the accident sets in progress the chain of events leading to death, or if it is the prime or moving cause. (*Brooks* v. *Metropolitan Life Ins. Co.,* 27 Cal.2d 305, 309-310 [163 P.2d 689].) There is no reason to argue that the *Brooks* rule should apply only to the facts of that case, to wit, a claim for death benefits; whether an accident results in total disability or death, the rationale is equally convincing.

Defendant also contends that plaintiff admitted in a statement to the insurer that the disability experienced in December 1966 resulted from getting out of bed, rather than from an injury. The statement was made on a form application for benefits. Inspection of the statement shows plaintiff was notifying the company that he had suffered a recurrence of pain and spasms from the January 4, 1966 injury, and in answer to the interrogatory, "What were you doing?" plaintiff wrote, "Getting out of bed." Plaintiff was not asserting that getting out of bed *caused* his pain and spasms, but only that he was getting out of bed when he felt the pain. In answer to the next interrogatory, "What caused your injury?" plaintiff stated, "Reoccourence [*sic*] of injury to back as reporte [*sic*] 1-4-66."

■ Finally, we note that appellant makes numerous references to injuries and illnesses which plaintiff suffered prior to applying for his insurance, none of which were divulged by plaintiff in his application. Said injuries and illnesses are irrelevant to this appeal to the extent defendant

is precluded from litigating them under the incontestability clause. The clause provides that statements made by the insured in his application shall be incontestable after the policy had been in force for a period of two years. The two-year period expired February 18, 1966, and this suit was not filed until 1968. Not having challenged plaintiff's application within the two-year period, defendant may be said to have taken the plaintiff as it found him and cannot now urge that plaintiff's disability resulted from a pre-existing disease, illness or injury not covered by the policy.

The judgment is affirmed.

Gabbert, J., and Kauffman, J., concurred.

A petition for a rehearing was denied January 12, 1972, and appellant's petition for a hearing by the Supreme Court was denied February 16, 1972.