The **PAUL REVERE LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Cheryl Dietz BASS, aka Sherral S. Bass, aka Shiryl S. Bass, aka Sherral S. McClanahan, aka Sheril Lee Dietz, Defendant.**

**No. 80–1195–WAI.**

United States District Court,
N. D. California.

Aug. 25, 1981.

---

* Final typed copy of Memorandum Opinion filed August 19, 1981.

James H. Fleming, Adams, Duque & Hazeltine, San Francisco, Cal., for plaintiff.

Gerald N. Offstein, Michael Dietrick, San Francisco, Cal., for defendant.

### DECISION

INGRAM, District Judge.

Plaintiff is entitled to judgment as hereinafter set forth.

*First Claim for Relief Fraud*

■ Plaintiff is entitled to judgment on that portion of its first claim that alleges fraud in the making of claims under the policy. The allegations concerning that charge are duly and properly pleaded in paragraphs 9 and 10 of the complaint.

Plaintiff is entitled to judgment as stated notwithstanding the presence of the "incontestable clause" [page 4 of Policy, Exhibit (A)]. The language of that clause is, in part, as follows:

"(a) After this policy has been in force for a period of two years during the lifetime of the insured, it should become incontestable as to the *statements contained in the application.*" *Emphasis supplied.*

■ There is in this case ample and unrefuted evidence of fraud without recourse to the statements made in the application which induced the issuance of the policy in the first place (Exhibit 23), although that document is itself replete with fraudulent misrepresentations.

The elements of fraud are as follows:

(1) Fraudulent misrepresentations.

(2) Knowledge by defendant of their falsity.

(3) Intent to deceive plaintiff.

(4) Reliance upon the representation by plaintiff, believing them to be true.

(5) Injury suffered as a result thereof by plaintiff.

*Cohen v. Metropolitan Life Ins. Co.*, (1939) 32 Cal.App.2d 377, 89 P.2d 732.

The following Exhibits constitute representations made *by defendant* to plaintiff which were false, forged for both:

(1) Progress reports numbered Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 13, 14, 16, 18 and 19. Letters numbered Exhibits 10, 15 and 20. Each of these were submitted to plaintiff by defendant. Each of them was prepared by defendant. (Testimony of Dr. Horowitz.) Each of them constituted a forgery of Dr. Horowitz's signature. (Testimony of Dr. Horowitz.) None of them were prepared or authorized to be prepared by Dr. Horowitz. (Testimony of Dr. Horowitz.) Defendant admitted that she had prepared them. (Testimony of Dr. Horowitz.)

(2) Other progress reports submitted to plaintiff by defendant are Exhibits 40, purported to be signed by Dr. Price; 44A, 45, 46, 49 and 56, purported to be signed by Dr.

Jones. There is no direct evidence of forgery concerning these, but it should be noted that Exhibit 40 purports to be signed by Dr. Price on July 1, 1977, which was nine days after Price changed his mailing address from Willow Spring, North Carolina to Raleigh, North Carolina. (Exhibit 125.)

Each of the above Exhibits constitute material representations. The policy, Exhibit A, provides on page 5 thereof, as follows:

NOTICE OF CLAIM. Written notice of claim must be given to the Company within thirty days after the occurrence or commencement of any loss covered by the policy, . . . .

CLAIM FORMS. The Company, upon receipt of a notice of claim, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss . . . .

TIME OF PAYMENT OF CLAIMS. . . . Subject to due written proof of loss, all accrued indemnities for loss for which this policy . . . will be paid at the expiration of each thirty days and any balance remaining unpaid upon the termination of liability will be paid immediately upon receipt of due written proof.

Exhibit A on page 2 provides in part:

A. TOTAL DISABILITY—ACCIDENT. If such injury results in continuous total disability and requires the regular and personal attendance of a licensed physician, . . . .

Thus, evidence of regular and personal attendance by a licensed physician is an essential prerequisite to the payment of monthly disability as indemnification for total disability resulting from accident, and the forgery of the report of the attending physician which is a part of the progress report is a material misstatement and misrepresentation.

The fact of forgery is further buttressed by Exhibit 126, unsigned typescript on Horowitz letterhead; Exhibits 131 and 132, Horowitz stationary and envelopes; Exhibit 134, typed statement on Horowitz prescription form.

Moreover, Exhibit 39, the Notice of Claim form, also requires the statement of an attending physician, and is purportedly executed by Gerald M. Price, M.D. There is no direct evidence of forgery with respect to the preparation of Exhibit 39 as there is with respect to the Horowitz progress reports and letters already identified by exhibit number. Exhibit 39 is suspect, however, because it purports to deal with an accident said to have occurred on April 21, 1977, and bears a physician's endorsement dated May 24, 1977. Exhibit 124 indicates that Dr. Price changed his address to Willow Springs, North Carolina, on April 13, 1977, more than a week prior to the date on which the accident giving rise to the disability supposedly happened. While it is of course possible that Dr. Price continued to maintain his office for the practice of medicine at 1491 Cedarwood Lane, Pleasanton, California, on April 21, 1977, and on May 24, 1977, after he had changed his address to another state, it seems extremely unlikely that he did so.

In addition to the apparent and proven forgery of some of the progress reports, each of them also declares material misstatements of fact which go directly to the heart of the company's liability under the policy. Each of them describes the onset of disability on April 21, 1977. Dr. Horowitz testified that he had treated defendant for the disability which had its onset in 1974, and that she had not worked since that time. Furthermore, each of them represent that defendant was receiving no other disability or retirement benefits. In fact, defendant received benefits from Mutual of Omaha from January 1, 1976 to July 9, 1979. (Exhibit 27.) She received from New York Life Insurance Company the sum of $14,210 between the dates of May 1, 1978, and February 24, 1979. (Exhibit 31.) She received from North American Company for Life and Health Insurance the sum of $16,200 between the dates of July 12, 1978 and January 11, 1979. (Exhibit 34.) She received from The Imperial Life Assurance Company of Canada the sum of $3,640.50 consisting of disability payments and refund of premiums between the dates

of May 24, 1977 and July 23, 1977. (Exhibit 33.)

The incontestable clause of the policy has nothing to do with the statements contained on progress reports. It goes only to statements contained in the application. (Exhibit A, page 4.) Clause (b) of the incontestable clause is not here applicable, in that the purported disability is not claimed by defendant to have commenced after two years from the date of issue of the policy. Defendant relies on the incontestable clause as a bar to any action predicated upon fraud in the application, and also to bar fraudulent claims rendered subsequent to the issuance of the policy. To an extent defendant, relying upon *Mutual Life Ins. Co. v. Margolis*, (1936) 11 Cal.App.2d 382, 53 P.2d 1017, contends that such a clause is in fact a statute of limitations entitling the insured to complete repose after its running. This contention will not hold water insofar as fraudulent claims asserted after the issuance of the policy are concerned. If defendant's contention is correct, then a fraudulent claim could be tendered the day before the termination of the period of contestability, and the insurer, no matter how diligent, would be denied remedy.

*Margolis, supra,* as well as *Coodley v. New York Life Ins. Co.,* (1937) 9 Cal.2d 269, 70 P.2d 602; *McMackin v. Great American Reserve,* (1971) 22 Cal.App.3d 428, 99 Cal. Rptr. 227; *New York Life Ins. Co. v. Kaufman,* 78 F.2d 398 (9th Cir. 1935); and *Mutual Life Ins. Co. v. Markowitz,* 78 F.2d 396 (9th Cir. 1935), all deal with effect of an incontestable clause upon alleged fraud in the application for the policy. The only case cited which even arguably supports the position of defendant with respect to the barring of fraudulent claims is *John Hancock Mutual Life Ins. Co. v. Dorman,* 108 F.2d 220 (9th Cir. 1939), which was also a case in which alleged misrepresentations in the application were relied upon, cites *Margolis, supra,* to the effect that a contest is precluded on any ground not specifically excepted in the clause itself. In the instant case the incontestable clause is operative only as to statements contained *in the application*; by reason of that wording all grounds of contest not pertaining to statements made in the application are, in my view, excepted from the operative effect of the clause. In *John Hancock,* the clause read:

The policy should be incontestable one year from the date of issue, except for the nonpayment of premiums.

As worded it covered all grounds of contest except the one specifically excepted. In the instant case the clause precludes contest in only one particular.

From the circumstances of the forgery it is apparent that defendant performed it with knowledge, and that the progress forms and forged Horowitz letters were forwarded to the company with the intent of inducing payment of the monthly indemnity.

The plaintiff relied upon the forged representations to its detriment because it paid a sum equal to $1,600 per month to defendant for many months. Mr. Lile testified that the making of the payments was predicated upon and induced by the content of the progress reports. Mr. Lile testified that in making the payments plaintiff relied upon the truth and accuracy of the progress reports.

In sum, plaintiff has shown by a preponderance of the evidence that defendant tendered a false and fraudulent claim to plaintiff, that the fraud was deliberate and knowing, and that plaintiff justifiably relied upon the misrepresentations made by defendant to its detriment and thereby incurred damages in a sum equal to the total amount paid out by it in satisfaction of defendant's claim. This is shown by Exhibit 25 to be the sum of $30,089.86.

Because of the wilful fraud perpetrated by defendant, plaintiff is entitled to exemplary damages in the sum of $15,000 and to its costs of suit actually incurred.

*Second Claim for Relief*

*Declaratory Relief*

Because the waiver of premiums was induced by the making of the fraudulent claim above described, I find that the

policy, although valid initially, has lapsed for nonpayment of premiums (Exhibit A, page 3, paragraphs F and G), and that no further liability exists thereunder.

The foregoing shall constitute findings of fact and conclusions of law. Fed.R.Civ.P. 52(a).