**PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY**

v.

**Melvyn COHEN.**

**No. Civ. CCB–99–CV–2517.**

United States District Court,
D. Maryland.

March 28, 2002.

Bryan D. Bolton, Derek Barnet Yarmis, Funk and Bolton PA, Baltimore, MD, for plaintiff.

Bruce M. Plaxen, Law Office, Columbia, MD, William P. Dale, McChesney and Dale, Bowie, MD, Blaime Maxwell Kolker, Plaxen and Adler PA, Columbia, MD, for Melvyn Cohen, defendant.

Jeffrey M. Mervis, Mervis and Associates LLC, Rockville, MD, for Montgomery Kitchen & Bath, Inc., defendant.

## MEMORANDUM

BLAKE, District Judge.

Provident Life and Accident Insurance Company ("Provident") filed an amended complaint on July 26, 2000 seeking to recover money paid to Melvyn Cohen under a disability insurance policy. In its Order dated March 29, 2001, the Court held that the state law claims in Counts One through Five of the amended complaint

are preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* The remaining claims, Counts Six through Eight, state claims for relief under ERISA. Essentially, Provident asserts that from March 1996 through June 1999 Cohen collected approximately $238,000 in benefits based on a claim of total disability under the policy when Cohen had in fact resumed performing some of the duties of his former occupation.

Cohen has filed an answer and counterclaim asserting that he is entitled to reinstatement of his monthly benefits. In the March 29, 2001 Order, the Court dismissed Count One of the counterclaim alleging a breach of fiduciary duty. The Court also dismissed that part of Count Four seeking punitive damages. Finally, the Court held that the state common law claims in the counterclaim are preempted by ERISA.

In the March 29, 2001 Memorandum, the Court also denied Cohen's motions for summary judgment on the remaining counts of the amended complaint and the counterclaim. The Court denied Cohen's previous motions for summary judgment in part because of "[t]he apparent discrepancy between many of Cohen's statements to Provident about his activities, on the one hand, and the activities indicated by documents obtained from [MKB] and elsewhere in the course of discovery, on the other hand ..." Memorandum, CCB–99–2517 (March 29, 2001) at 9. Now pending before the Court are renewed motions for summary judgment by Cohen on the remaining counts of the amended complaint and the counterclaim. This matter has been fully briefed and no hearing is necessary. *See* Local Rule 105.6. For the reasons that follow, the Court will deny defendant's motions.

## I.

Rule 56(c) of the Federal Rules of Civil Procedure provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A genuine issue of material fact exists if there is sufficient evidence for a reasonable finder of fact to return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994). In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in her favor. *Halperin v. Abacus Tech. Corp.,* 128 F.3d 191, 196 (4th Cir.1997) (*citing Anderson,* 477 U.S. at 255, 106 S.Ct. 2505). The non-moving party may not rest upon mere allegations or denials in her pleading, however, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Allstate Fin. Corp. v. Financorp, Inc.,* 934 F.2d 55, 58 (4th Cir.1991). The "mere existence of a scintilla of evidence in support of the plaintiff's position" is not enough to defeat a defendant's summary judgment motion. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

## II.

In December 1987, Provident issued Cohen individual disability insurance policy number 6–335–816835. Cohen was President, sales manager, and top salesman of Colonial Distributors, Inc., a bath and kitchen supply reseller. Cohen worked approximately 60 hours per week. (*See*

Insured's Statement of Claim, Pl.Ex. 3.) Eighty percent of his time was spent performing the duties of head salesman. (*Id.*) As head salesman, Cohen was required to have endurance and engage in physical activity. He spent most of his time in the field developing sales for the company. Ten percent of his time was spent performing the duties of sales manager, and the remaining ten percent of his time was spent performing the duties of president. (*Id.*) On November 17, 1995, Cohen suffered a sudden heart attack, requiring him to undergo quadruple bypass surgery. Cohen was instructed by his physicians to sell his business and to cease working.

On or about January 15, 1996, Cohen claimed Total Disability benefits under his insurance policy. The policy defines the terms Total Disability and Residual Disability as follows:

**Total Disability** or **totally disabled** means that due to Injuries or Sickness:
1. you are not able to engage in your occupation; and
2. you are receiving care by a Physician which is appropriate for the condition causing the disability.

**your occupation** means the occupation (or occupations, if more than one) in which you are regularly engaged at the time you became disabled.

**Residual Disability** or **residually disabled,** during the Elimination Period, means that due to Injuries or Sickness:
1. you are not able to do one or more of your substantial and material daily business duties but you are able to do at least one of said substantial and material daily business duties, or, you are not able to do your usual business duties on a full time basis;
2. you have a Loss of Monthly Income in your occupation of at least 20%; and
3. you are receiving care by a Physician which is appropriate for the condition causing disability. ⁂

After the Elimination Period has been satisfied, you are no longer required to have a loss of duties or time. **Residual Disability** or **residually disabled** then means that as a result of the same Injuries or Sickness:
1. you have a Loss of Monthly income in your occupation of at least 20%; and
2. you are receiving care by a Physician which is appropriate for the condition causing the Loss of Monthly Income.

(Insurance Policy, Def.Ex. 2 at 4, 8.)

From January 15, 1996 to June 21, 1999, Cohen continued to receive benefits and Provident waived further premium payments. Cohen submitted monthly supplementary statements to Provident during the period he received benefits. In general, Cohen stated in these supplementary statements that he occasionally visited Colonial or MKB to check on the progress of business or the buyout by his sons. (*See, e.g.,* Pl.Ex. 4, Pl.Ex. 6.) He always stated that he was unable to perform "all duties" of his occupation. (*See, e.g.,* Pl.Ex. 7, Pl. Ex. 8.) He stated that he would never return to work full or part-time. (*See, e.g.,* Pl.Ex. 7.) Finally, beginning sometime around May 1997, Cohen began reporting that he was performing volunteer work. (*See, e.g.,* Pl.Ex. 10, Pl.Ex. 11, Pl.Ex. 12, Pl.Ex. 13.) It is undisputed that Cohen did not receive any income from Colonial or MKB after his surgery.

Following his doctor's orders, Cohen sold his company, Colonial, to his sons in July 1997. The company was renamed Montgomery Kitchen and Bath ("MKB"). In February 1999, Provident hired Legal Investigations, Inc. ("Legal") to conduct surveillance of Cohen. Between March 3 and May 4, 1999, Legal conducted nine days of surveillance. Legal's investigation resulted in two written reports and 14 minutes of videotape. Legal determined

that on March 4, 1999, Cohen met with men at a construction site and physically entered the construction site. (*See* Legal Letter, Pl.Ex. 18.) After leaving the site, Cohen drove to MKB and entered the office with papers. (*Id.*) Cohen stayed at MKB for 30 minutes and drove to the address of a different construction company. (*Id.*) Cohen stayed at the construction company's office for approximately 15 minutes and returned to MKB with a folder. (*Id.*) Cohen remained at MKB for two hours before returning home. (*Id.*)

Cohen was also observed by Legal going to the MKB offices on at least three other occasions. (*See generally id.;* Pl.Ex. 21.) Finally, the chief Legal investigator, Richard Alpert, contacted MKB and spoke to Robert Theodore who allegedly stated that Cohen worked at MKB approximately 40 hours per week. (*See* Alpert Dep. at 22–24, 35, Pl.Ex. 20.)[1] In June 1999, based on the Legal investigation, Provident informed Cohen that it was ending his benefits. In his appeal to Provident, Cohen submitted affidavits of several managers and employees swearing that Cohen was not employed by MKB. Cohen also submitted a statement in which he explained his actions monitored by Legal. After reviewing the evidence submitted by Cohen, Provident informed Cohen on November 5, 1999 that it was upholding its decision to terminate his disability benefits. This litigation ensued.

### III.

The Court will first address the renewed motion for summary judgment on the counterclaim. Cohen essentially argues there is no genuine dispute that he is totally disabled within the meaning of the policy and that Provident must restore his benefits.

The first issue is what evidence the court may consider in reviewing the decision of Provident to terminate Cohen's benefits. "[A] district court should review *de novo* a plan administrator's denials of benefits ... unless the benefit plan 'gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.' " *Quesinberry v. Life Ins. Co. of North America,* 987 F.2d 1017, 1021 (4th Cir.1993) (*quoting Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). "[C]ourts conducting *de novo* review of ERISA benefit claims should review only the evidentiary record that was presented to the plan administrator or trustee except where the district court finds that additional evidence is necessary for resolution of the benefit claim." *Id.* at 1026–27. The Fourth Circuit provided several examples of circumstances in which additional evidence may be viewed, including "the availability of very limited administrative review procedures with little or no evidentiary record." *Id.* at 1027.

■ In this case, the parties do not dispute that the court should review Provident's decision *de novo*. They do, however, dispute whether the court should be allowed to view additional evidence that was not considered by Provident in making the determination to cancel benefits. Cohen fails to make a persuasive argument that additional evidence should be excluded. As Provident argues, the documentary evidence obtained in discovery was not available to Provident at the time the administrative decision was made. The additional evidence presented is essential in allowing the court to determine whether Cohen was totally disabled under his insurance policy. *See* Memorandum, CCB–99–2517 (March 29, 2001) at 2 ("Considering ... the inadequacy of the administrative record as a basis for the court to resolve Provident's claims against Cohen,

---

1. The validity and admissibility of Theodore's     statement is disputed.

even if ERISA governs those claims, the motion [to enlarge discovery] will be **Granted.**") (*citing Quesinberry,* 987 F.2d at 1026–27).

The second issue is the meaning of the term "Total Disability" in the insurance policy. Cohen argues that this is a simple case because Total Disability means that an individual cannot perform any of his substantial or material duties. Provident argues that "Total Disability" must be viewed in light of the "Residual Disability" clause.

█ An ERISA plan is interpreted "under ordinary principles of contract law, enforcing the plan's plain language in its ordinary sense." *Wheeler v. Dynamic Engineering, Inc.,* 62 F.3d 634, 638 (4th Cir. 1995). Where a term is ambiguous, it must be construed against the drafter, "and in accordance with the reasonable expectations of the insured." *Id.; see also Jenkins v. Montgomery Indus., Inc.,* 77 F.3d 740, 743 (4th Cir.1996). Further, an ERISA plan is interpreted under the federal common law, although the court may use principles of state common law to guide its analysis. *Wheeler,* 62 F.3d at 638. Maryland law is consistent with these principles. In Maryland, the interpretation of an insurance policy is guided by the same principles that apply to the construction of any other contract. *Yahiro v. Northwestern Mutual Life Insurance Co.,* 168 F.Supp.2d 511, 514 (D.Md.2001) (*citing Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.,* 330 Md. 758, 625 A.2d 1021, 1031 (1993)). "Furthermore, the insurance contract must be 'viewed as a whole, without emphasis being placed on particular provisions. Moreover, whenever possible, each clause, sentence, or provision shall be given force and effect.' " *Id. (quoting Em-*

*pire Fire & Marine Co. v. Liberty Mut. Ins. Co.,* 117 Md.App. 72, 699 A.2d 482, 493–94 (1997)). Finally, Maryland does not follow the rule that an insurance contract is to be construed most strongly against the insurer, although an ambiguous provision may be construed against the drafter. *See Cheney v. Bell Nat'l Life Ins. Co.,* 315 Md. 761, 556 A.2d 1135, 1138 (1989); *see also Jenkins,* 77 F.3d at 743.

█ Cohen argues that if he cannot perform all of the substantial duties of his regular occupation, he is totally disabled within the meaning of the insurance contract. This view of the term "Total Disability" is incorrect because it ignores the "Residual Disability" term in the insurance contract. When the insurance contract is considered as a whole, it is clear that where the insured "is unable to perform one or more *but not all* of the principal duties of the regular occupation," he is not totally disabled, but residually disabled. *Yahiro,* 168 F.Supp.2d at 517; *Dym v. Provident Life & Acc. Ins. Co.,* 19 F.Supp.2d 1147, 1150 (S.D.Cal.1998) ("A comparison of the two definitions suggests that the phrase 'you are not able to perform the substantial and material duties of your occupation' as used in the 'total disability' definition cannot reasonably be read as 'you are not able to perform one or more of the substantial and material duties of your occupation,' because if such a reading was intended, the language 'one or more' would have been used, as it is in the 'residual disability' definition."); *see also Giampa v. Trustmark Ins. Co.,* 73 F.Supp.2d 22, 27–28 (D.Mass.1999) ("Insurance policies containing provisions for total and partial disability must be construed as a whole, so as to give effect to the entire contract.").[2] Accordingly, Co-

---

**2.** Cohen contends that the language in the "Residual Disability" clause involving "one or more of your substantial and material daily business duties" is not applicable because the

Elimination Period of 90 days has passed. This argument is unpersuasive, because that definition is still "relevant to the court's analysis of the 'total disability' provision" and

hen was not entitled to Total Disability benefits if he could perform one or more of the substantial duties of his occupation.[3]

■ The final issue is whether there is a genuine dispute that Cohen was able to perform one or more of the substantial duties of his occupation. The numerous documents and other evidence presented by Provident could provide a basis for a fact-finder to conclude that Cohen was performing substantial duties on behalf of Colonial and MKB following his surgery. Accordingly, this motion must be **Denied.**

### IV.

■ The Court will next address Cohen's motion for summary judgment on the amended complaint. Cohen argues that the remaining claims of the amended complaint, Counts Six through Eight, are not cognizable under ERISA. In Count Six, Provident seeks restitution of the benefits paid to Cohen under an unjust enrichment theory. In Counts Seven and Eight, Provident seeks equitable relief declaring that the insurance policy is null and void and has lapsed due to Cohen's misrepresentations and failure to continue making premium payments.

"In enacting ERISA, Congress established a comprehensive statutory scheme to govern employee benefit plans." *Singer v. Black & Decker Corp.*, 964 F.2d 1449, 1452 (4th Cir.1992) (*citing Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). Congress

also intended for courts to "develop a federal common law of rights and obligations under ERISA-regulated plans." *Id.* (citations omitted). In Count Six, Provident seeks to pursue a claim of unjust enrichment because ERISA does not explicitly provide a remedy for the plan administrator to recover monetary damages.

The Fourth Circuit has addressed the viability of an unjust enrichment claim under ERISA. *See Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985 (4th Cir.1990).[4] *Waller* involved an ERISA plan containing an "Acts of Third Parties" provision which allowed an advance payment for medical expenses to a plan participant injured by a third party. *Id.* at 986. The provision also required the participant to agree to reimburse the plan from any judgment or settlement obtained from the third party. After Waller was injured in an automobile accident, she requested advanced medical expenses. The insurer failed to obtain a signed repayment agreement, as required by the plan. Waller later recovered damages from the third party and the insurer brought suit against Waller when she refused to reimburse the plan. *Id.* at 986–87.

The Fourth Circuit held that allowing an unjust enrichment claim was appropriate under the circumstances because the remedy "would *further* the contract between the parties and effectuate the clear intent of [the insurer's] 'Acts of Third Parties' clause." *Id.* at 993. The *Waller* Court

---

establishes the intent of the parties to have the Residual Disability provision apply to employees who could perform one or more of their substantial duties. *Dym*, 19 F.Supp.2d at 1150 (addressing an identical argument).

3. Cohen does not claim to be entitled to Residual Disability benefits, but simply argues that he is totally disabled. Provident argues that Cohen is not residually disabled within the meaning of the insurance policy because there is no evidence that his Loss of Monthly

Income, as defined in the policy, was caused by his Residual Disability. Instead, Provident argues that his loss of income was voluntary because he chose to retire from Colonial and "volunteer" for MKB.

4. In *Waller*, the Fourth Circuit found federal question jurisdiction existed under 28 U.S.C § 1331(a). 906 F.2d at 988 & n. 6. It noted, but did not decide, that § 1132(a)(3) might also provide a basis for federal jurisdiction. *Id.*

further noted that an unjust enrichment remedy was "in accord with the statutory provision in ERISA that allows for the return of mistakenly paid contributions made by employers to multiemployer plan funds," because that provision "indicates a desire to ensure that plan funds are administered equitably and that no one party, not even plan beneficiaries, should unjustly profit." *Id.* Finally, the Court noted that "the facts of [*Waller*] fit the archetypal unjust enrichment scenario," which requires the plaintiff to establish that: "(1) [the plaintiff] had a reasonable expectation of payment, (2) the defendant should reasonably have expected to pay, or (3) society's reasonable expectations of person and property would be defeated by nonpayment." *Id.* at 993–94 (*citing* C. Kaufman, *Corbin on Contracts* § 19A, at 50 (Supp.1989)). Overall, the Court concluded that recognizing an unjust enrichment claim "furthers the purposes of ERISA." *Id.* at 993.

Cohen asserts that *Waller* is distinguishable because Cohen was not entitled to benefits until Provident determined that he was eligible and Cohen never expected to reimburse Provident. If, however, Cohen fraudulently misrepresented his disability to Provident as alleged, Cohen should have reasonably expected to reimburse Provident. Additionally, Cohen should not unjustly profit based on his alleged misrepresentations to Provident. An unjust enrichment claim in this case furthers the ERISA goal of safeguarding plan funds by protecting the funds from fraud. Accordingly, an unjust enrichment claim for restitution under ERISA is viable and Count 6 presents a valid claim. *See Heller v. Fortis Benefits Ins. Co.*, 142 F.3d 487, 495 (D.C.Cir.1998) (holding that an unjust enrichment claim under ERISA was viable where a plan beneficiary wrongly received total disability funds although she was not totally disabled under the insurance policy); *see also Luby v. Team-sters Health, Welfare, & Pension Trust Funds*, 944 F.2d 1176, 1186 (3d Cir.1991) (holding that a federal common law restitution claim was available under ERISA where pension funds were mistakenly paid to the wrong beneficiary); *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1548–49 (11th Cir.1990) (allowing a restitution claim by a fiduciary under ERISA § 1132(a)(3) where the recipient of plan funds received benefits to which he was not entitled).

▮▮▮▮ In Count Seven, Provident seeks an order that the insurance policy covering Cohen is null and void due to his false representations during the claims review and administrative process. Count 8 seeks an order declaring that the insurance policy has lapsed for nonpayment of premiums because Cohen, through his misrepresentations, induced Provident to waive premiums that should not have been waived.

Section 502(a)(3) of ERISA authorizes a civil action:

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates ... the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce ... the terms of the plan.

29 U.S.C. § 1132(a)(3); *see also Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 712, 151 L.Ed.2d 635 (2002). There is no dispute that Provident is a fiduciary within the meaning of ERISA. The term "equitable relief" in § 502(a)(3) refers to "those categories of relief that were *typically* available in equity...." *Id.* (*quoting Mertens v. Hewitt Assoc.*, 508 U.S. 248, 256, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (emphasis in original)). The remedies sought in both counts 7 and 8 do not involve money damages and are equitable in nature. *See Washington Homes, Inc. v. Interstate*

853

*Land Development Co., Inc.,* 281 Md. 712, 382 A.2d 555, 563 (1978) (stating that "[w]here . . . there has been a material breach of a contract by one party, the other party has a right to rescind it" or to have equity rescind it); *Paul Revere Life Ins. Co. v. Bass,* 523 F.Supp. 134, 137 (N.D.Cal.1981) (issuing declaratory relief that the insurance policy lapsed for non-payment of premiums because the waiver of premiums was induced by the making of a fraudulent claim). Accordingly, Counts Seven and Eight present viable claims.

The final issue is whether there is a genuine dispute of material fact regarding Counts Six through Eight of the amended complaint. The numerous documents and other evidence presented by Provident clearly establish a genuine dispute whether Cohen was misrepresenting the extent of his disability to Provident. Accordingly, this motion must be **Denied.**

A separate order follows.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that:

1. Defendant's renewed motion for summary judgment upon Defendant's counterclaim (Docket No. 147) is **Denied;**

2. Defendant's renewed motion for summary judgment upon the amended complaint (Docket No. 148) is **Denied;** and

3. The Clerk shall send copies of this Order and the accompanying Memorandum to counsel of record.