Francis J. ZAMBITO, an individual, Plaintiff—Appellant,

v.

NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, a corporation, Defendant—Appellee.

No. 02–56552.

D.C. No. CV–01–04269–FMC.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 2003.

Decided Jan. 15, 2004.

Edward O. Lear, Los Angeles, CA, Kriss Halpern, Santa Monica, CA, for Plaintiff–Appellant.

James P. Collins, Jr., Cotkins, Collins & Ginsburg, Santa Ana, CA, for Defendant–Appellee.

Before BRIGHT,* O'SCANNLAIN, and McKEOWN, Circuit Judges.

### MEMORANDUM**

Francis J. Zambito, a dentist, appeals from the district court's summary judgment in favor of Northwestern Mutual Life Insurance Company ("Northwestern") on Zambito's claims for disability insurance coverage. Because Zambito presents evidence of genuine issues of material fact under California law, we reverse the district court and remand for further proceedings.

## I. Factual and Procedural Background

During the 1980s, Zambito developed a thriving dental practice in the Los Angeles area and purchased four disability insurance policies from Northwestern to protect his income. In 1989, he began showing symptoms of bipolar disorder, a mental illness, which gradually began to interfere severely with his work.

In late August and early September, 1991, Northwestern informed Zambito that his policies had lapsed for lack of payment on the premiums. However, the policies each contained a waiver provision such that if Zambito suffered a total or partial disability within the policy terms prior to the lapse date, the policies would remain in force even without premium payment.

Despite his deteriorating mental health, Zambito continued to show up at the office and attempt to work until December 2, 1991, when he finally saw a psychiatrist who persuaded him to stop practicing dentistry. In fact, his annual income for 1991 barely fell below the levels he had achieved in previous years.

Finally, after a series of complex interactions with another disability insurer on matters unrelated to the issues here, Zambito applied for benefits from Northwestern in July of 1996. Zambito asserted that his total disability began in April, 1989.

Northwestern denied Zambito's claim on November 10, 1999. Zambito filed the present action for recovery of his policy benefits, alleging both contract and tort claims, on July 14, 2000 in California Superior Court. Northwestern removed the action to the United States District Court for the Central District of California. The district court granted summary judgment against Zambito on all of his claims on August 23, 2002.

Finding that Zambito worked and earned money during the relevant time period, the district court held as a matter of law that Zambito could not be disabled under the policies. The district court relied primarily on *Goomar v. Centennial Life Ins. Co.*, 76 F.3d 1059, 1060, 1061 (9th Cir.1996) (applying California law) for the dispositive proposition that earned income precluded eligibility for disability benefits. In *Goomar*, we held that a doctor who had molested patients but who did not present evidence of any mental disorder could not avoid summary judgment in favor of his disability insurer. 76 F.3d at 1060, 1061.

## II. Standard of Review

We review the district court's grant of summary judgment de novo. *Goomar*, 76 F.3d at 1061. In reaching our conclusion, we must construe the evidence in the light most favorable to Zambito as the non-moving party. *Brookside Assocs. v. Rifkin*, 49 F.3d 490, 492–93 (9th Cir.1995). If

---

* The Honorable Myron H. Bright, United States Circuit Judge for the Eighth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Zambito's evidence suffices to create a genuine issue of material fact, we must reverse the grant of summary judgment to Northwestern. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir.2002).

In this diversity action, California substantive law applies. *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1163 (9th Cir.1995). California treats construction of the terms in an insurance policy, such as "disability," as a matter of law. *Continental Cas. Co. v. Richmond*, 763 F.2d 1076, 1079 (9th Cir.1985). However, whether a policyholder such as Zambito actually satisfies the terms of the policy presents a question of fact for the jury. *McMackin v. Great Am. Reserve Ins. Co.*, 22 Cal.App.3d 428, 99 Cal.Rptr. 227, 233 (1971).

## III. Discussion

■ Under California precedent, the district court erred in holding that Zambito's return to work necessarily precluded his recovery on the disability insurance policies. *McMackin*, 99 Cal.Rptr. at 233; *Wright v. Prudential Ins. Co.*, 27 Cal. App.2d 195, 214–15, 80 P.2d 752 (1938).[1] In both *Wright* and *McMackin*, the California courts determined that a covered policyholder's futile attempts to return to employment could not render the policyholder ineligible as a matter of law for disability insurance benefits. Rather, if reasonable care and prudence required that Zambito desist from attempting to practice dentistry, he may show that he was disabled even if he continued to earn income from work. *See Wright*, 27 Cal. App.2d at 214–15, 80 P.2d 752. Northwestern has failed to distinguish these ex-

pressions of California law from the facts of the case at bar.

Once a court recognizes that a mere return to work does not automatically render an insured party ineligible for disability benefits, the inquiry turns toward the challenging issue of identifying when an income-earning policyholder is too disabled to work. In *Erreca v. Western States Life Ins. Co.*, the California Supreme Court held that "the term 'total disability' does not signify an absolute state of helplessness but means such a disability as renders the insured unable to perform the substantial and material acts necessary to the ... occupation in the usual or customary way." 19 Cal.2d 388, 121 P.2d 689, 695 (1942). Under this standard, we evaluate Zambito's performance as a dentist during the time he retained coverage under the Northwestern policies to determine whether he could perform the major duties of his profession in the usual or customary way.

## IV. Genuine Issue of Material Fact

■ If Zambito's proffered evidence did not create a reasonable inference that he could not work in the customary way because of his mental illness, then we would affirm the district court's judgment. However, because the evidence, reasonably viewed in Zambito's favor, tends to support his claims, he has met his burden of showing that a genuine issue of material fact exists.

To reach this conclusion, we consider three logical elements of Zambito's claim: first, that he performed incompetently prior to the summer of 1991; second, that he performed competently prior to the alleged manifestation of his mental illness in 1988–89; and third, that the nature of his

---

1. While the California Supreme Court has not expressly addressed this issue, we may not disregard persuasive precedents from the state intermediate appellate court in the ab-

sence of state supreme court cases to the contrary. *Insurance Co. of Pa. v. Associated Int'l Ins. Co.*, 922 F.2d 516, 520 (9th Cir. 1990).

incompetence comported sufficiently with the symptoms of his bipolar disorder so as to create a reasonable inference that the disorder caused his incompetence. We briefly review below, in a non-exhaustive fashion, the facts on each of these elements.

### A. Zambito's Evidence of Incompetent Performance from 1989–1991

Zambito faced disciplinary action from the California Board of Dental Examiners in 1993 for conduct against patients that the oversight board considered "gross negligence" and "incompetence." While the charges themselves were brought well after Northwestern alleges that Zambito's policies lapsed, the factual foundation for the Board's actions rested largely on Zambito's conduct occurring before 1991.

These charges relied on evidence that Zambito routinely performed vastly deficient (and needlessly painful) dentistry, including breaking one patient's jaw by applying too much force to a pulled tooth. Witnesses from Zambito's office explained that Zambito consistently acted erratically, that he abused prescription drugs, and that he endangered patients. Occasionally, he would leave work suddenly or for unexplained lengths of time.

Zambito also presented evidence from several expert witnesses, including treating and examining psychiatrists. Drs. Ronald Shlensky, Linda Gummow, and James McElhaney each opined that Zambito was too sick to practice his occupation from 1989 onward.

Even Northwestern's own consulting psychiatrist, Dr. Michael Logan, noted in Zambito's file that "Zambito was suffering from a significantly impairing psychiatric disorder, i.e. Bipolar Disorder, on 4/1/91." Dr. Logan's use of the phrase "significantly impairing" might reasonably be construed to mean "disabled," given the context of a disability claim referral. The referral by Northwestern stated in part:

> We are trying to determine if we [sic] objective evidence to support Dr. Z and his attorney's claim that Dr. Z. was affected by bi-polar at the time our policies lapsed in August and Sept of 1991, and that his medical condition at that time would have affected his ability to 1. perform his occupational duties either on a full or part time basis 2. affect his reasoning or capability to understand what he was doing when he let our policies lapsed [sic] and purchased MN Mutual policies.

This is strong affirmative evidence that Zambito was disabled during the policy period, and that Northwestern learned of it during its investigation in 1999.

Finally, Zambito's own testimony, albeit self-serving, cannot be disregarded at this stage of the litigation. Through his declaration and deposition testimony, Zambito unambiguously confirms that he could not perform the substantial duties of dentistry in the customary way at any time after 1989.

### B. Zambito's Evidence of Competent Performance before 1989

Many of the same witnesses who cooperated with the state investigation of Zambito's practice also remarked upon Zambito's expertise and success before his severely erratic behavior began in 1989. For example, Sylvia Cardona, one of his colleagues, told the police that "in 1988, Zambito was an excellent dentist, and had a very personal touch with his patients."

The state investigation of Zambito's abuse of drugs and his power to prescribe drugs appears to have found no evidence of abuse before 1989. Zambito's personal physician at that time declared that before 1989, Zambito "demonstrated excellent

skills as a dentist and was one of the best dentists in the Los Angeles area. . . ."

Again, Zambito himself offered admissible evidence in the form of both a declaration and deposition testimony indicating that he had not always been incompetent, but performed quite successfully before the manifestation of his illness in 1989.

### C. Zambito's Conduct Matched the Symptoms of Bipolar Disorder

After examining Zambito and reviewing his medical records, one doctor remarked that "the validity of [Zambito's] Bipolar Disorder diagnosis has not been questioned" by any party. McElhaney, Zambito's personal doctor, declared that Zambito's irrational conduct and bad judgment "in all probability were the result of his bipolar disorder." One of Zambito's later psychiatrists, Dr. Peter Hirsch, declared that Zambito's symptoms in 1990 and 1991 "are consistent with the diagnosis of bipolar disorder." Again, Northwestern's own consultant testified in his deposition that Zambito's bizarre conduct in 1989–90 "would be consistent with a number of things including a bipolar disorder."

This medical evidence goes well beyond the "scintilla" necessary for Zambito to create a triable issue of fact on whether his illness caused his inability to work. On the evidence submitted, a reasonable jury could find that if Zambito could not perform his professional responsibilities in the customary way, then his bipolar disorder caused that incapacity.

### V. Conclusion

Based on the precedents referenced above, we are compelled to reverse the district court's legal conclusion that Zambito's receipt of income precluded his recovery of disability benefits under California law. We further determine that Zambito has presented sufficient evidence to allow a reasonable jury to conclude that he suffered bipolar disorder well before his policies would have lapsed, that the bipolar disorder caused him to act erratically, and that as a result he could not perform the substantial duties of his occupation in the customary way. Therefore, we REVERSE the grant of summary judgment and REMAND for further proceedings.

In arriving at this disposition, we decline to reach issues not fully addressed or decided by the district court, including Zambito's various tort claims and Northwestern's potential statute of limitations defense. The district court is now free to consider the remainder of the claims and defenses of the insurer, applying California law as appropriate.

**REVERSED AND REMANDED.**